# F. WILLIAM SCHAUN *vs.* JACKSON BRANDT.

*Corporations*: *purchase of own stock; agreement against pub-*
*lic policy, and void; bond to secure payment, void; void*
*and ultra vires; not affected by subsequent change*
*of law. Statutes of foreign States, and*
*common law; presumption.*

In the absence of express authority, a corporation has no
power to contract for the purchase of its own stock; and
a promise to pay money knowingly loaned, or advanced, for
that purpose can not be enforced.                    p. 563

Such a contract is contrary to public policy, and is illegal and
void.                                                p. 563

A bond given to secure the payment of the price which a
corporation so agreed to pay for its own capital stock, when
not authorized by law so to purchase it, is a bond in further-
ance of an illegal contract and can not be enforced.

p. 564

In order to enforce a contract for the purchase of its own
capital stock by a corporation, it must appear that the pur-
chase was authorized by the law of the State in which the
corporation was incorporated.                        p. 565

The Courts of the several States will not take judicial cogni-
zance of the laws of another State at variance with the
common law; but in the absence of proof will presume the
common law prevailing in such other State to be the same as
in their own.                                        p. 565

But where one State changes the common law by statute there
is no good reason to presume that the legislatures of other
States have done likewise.                           p. 565

The validity of an agreement depends upon the law existing
at the time it was made.                             p. 566

If a contract is illegal by statute or on grounds of public policy when it was executed, it is not rendered legal by the repeal of the statute or a subsequent change of the public or legislative policy.                    p. 566

*Decided November 22nd, 1911.*

Appeal from the Superior Court of Baltimore City (GOR-TER, J.).

The cause was argued before BOYD, C. J., PEARCE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*F. W. Schaun* and *August W. Schnepfe,* for the appellant.

*Clarence A. Tucker* (with whom were *Samuel J. Harman, Charles H. Knapp* and *Joseph N. Ulman* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought against the surety on a bond which is in part as follows:

*"Know All Men By These Presents,* That the United States Land Company, a body corporate, with its office at 501 Gaither Building, Baltimore, Md. (hereinafter called the principal), and Jackson Brandt (hereinafter called the surety), are held and firmly bound unto F. William Schaun, of Baltimore, Md., his personal representatives and assigns, in the full sum of nine hundred dollars, payable in Baltimore, Md., in gold coin of the United States of America, or its equivalent, whereof we bind ourselves firmly by these presents, jointly and severally, and each and every of our heirs, personal representatives, successors and assigns. Signed, sealed and dated the 8th day of September, 1908.

"WHEREAS, The principal has this day, to wit, September, 1908, purchased from the said F. William Schaun 100 shares of the capital stock of the United States Land Company at and for the sum of nine hundred dollars, and has agreed to pay the

purchase price on or before the 8th day of September, 1909, and to better secure the aforesaid payment has conveyed unto the said F. William Schaun one hundred shares of the capital stock of the Continental Improvement and Development Company.

"Now therefore the condition of the foregoing obligation is, such, that if the said principal shall well, truly and faithfully comply with the terms, conditions and requirements of said agreement and pay the said sum of nine hundred dollars, within one year from the date hereof, then the obligation of this bond shall be null and void; otherwise to remain in full force and virtue in law."

The bond is set out in full in the *narr.*, which charges that the principal and surety have failed to pay the said sum of nine hundred dollars, and further declares:

"That the United States Land Company is a body corporate, incorporated under the laws of the State of Delaware, under which, on or about the 8th day of September, 1908, by Chapter 167, section 19, Volume 22, it was provided, that the shares of stock of the corporation belonging to the corporation shall not be voted directly or indirectly. And that on or about January, 1909, the General Assembly repealed said section 19 of Chapter 167 and re-enacted the following, to wit, Chapter 154 of the Laws of 1909, which is as follows:

"Section 1. That Chapter 167, Volume 22, Laws of the State of Delaware, be amended by striking out section 19 of said Act and inserting in lieu thereof the following:

"Section 2. Every corporation organized under the act shall have the power to purchase, hold, sell and transfer shares of its own capital stock, provided that no such corporation shall use funds or property for the purpose when such use would cause impairment of the funds of the said corporation. And provided further, that the shares of its own capital stock shall not be voted upon directly or indirectly."

Having set out the provisions of section 19 as it existed prior to the Act of 1909, and also the changes made by that act, the *narr.* then alleges, as the conclusions of the pleader, that the plaintiff, by section 19 as formerly enacted, and as

enacted by the Act of 1909, was given "power to purchase its own capital stock."

The defendant demurred to the declaration and the Court below sustained the demurrer. The plaintiff refused to amend, and this appeal is from a judgment in favor of the defendant.

The bond shows that it was given to secure the payment of the amount that the United States Land Company, on the 8th of September, 1908, agreed to pay the appellant for one hundred shares of its capital stock, and the question presented by the demurrer is, does the *narr.* show that the appellant is entitled to recover upon the bond?

Now it is conceded, that a Maryland corporation, in the absence of express authority, has no power to contract for the purchase of its own stock, and that a promise to pay money knowingly loaned or advanced for that purpose can not be enforced. This is so not only because of the provisons of the statute law of the State, but because both the creditors and other stockholders of the corporation may be injured by the unauthorized reduction of its capital, and such a contract is contrary to public policy and is illegal and void. *Md. Trust Co.* v. *Mechanics' Bank,* 102 Md. 608; *Burke* v. *Smith,* 111. Md. 624.

The appellant contends, however, that the rule stated cannot be applied in this case because the suit is against the surety, who is estopped from denying the authority of the principal to execute the bond, and he cites authorities supporting the proposition that the execution as surety of a bond given by a corporation estops the surety from denying the existence of the corporation or its authority to make the bond. But this contention entirely overlooks the distinction between an *ultra vires* contract and a contract based upon an illegal consideration. In *Md. Trust Co.* v. *Mechanics' Bank, supra,* CHIEF JUDGE McSHERRY says: "*Ultra vires* and illegality represent totally different ideas. *Bissell* v. *R. R.,* 22 N. Y. 269. *Ultra vires* contracts are strictly speaking, only those which

are defective solely because they are beyond the power of the corporation; when they involve some adventure or undertaking not within the scope of the charter, which is the rule of its corporate action. *Leslie* v. *Lorillard,* 110 N. Y. 519; S. C. 1, L. R. A. 456. If the contract is illegal as in violation of established principles of public policy, it can not, of course, be enforced. 2 *Page on Con.,* sec. 1084, and the like result will follow if the contract is repugnant to the Code." The distinction is also recognized in the case of *Burke* v. *Smith, supra,* where it is said: "All the cases distinguish between an *ultra vires* act and one that is unlawful and illegal. In certain cases an endorser may be held upon a note the consideration of which is based upon an *ultra vires* act, but a contract to do an illegal act and one against public policy is held to be a contract of 'evil tendency' and unenforceable. *Emerson* v. *Townsend,* 73 Md. 224; *Hanauer* v. *Doane,* 12 Wall. 439; *Lester* v. *Bank,* 33 Md. 562; *Md. Trust Co.* v. *Mechanics' Bank,* 102 Md. 616; *Black* v. *Bank of Westminster,* 96 Md. 399." In 27 *Ency. of Law* (2nd ed.), 442, it is stated: "A person can not bind himself as surety in an obligation executed in violation of an express statute, nor can he evade the spirit of the law by doing indirectly what he is forbidden to do directly. The contract must not be opposed to public policy." See also 32 *Cyc.* 29. Here the bond was given to secure the payment of the price which the United States Land Company agreed to pay the appellant for one hundred shares of its stock, and unless such purchase was authorized by law, the bond was given in furtherance of an illegal contract, and can not be enforced.

It is stated in the brief of counsel for the appellant, as it was in his oral argument in this Court, that the real consideration for the execution of the bond was a loan of seven hundred and fifty dollars by the appellant to the appellee. But as to that it is only necessary to say that it does not so appear by the declaration, and that such a statement is a contradiction of the terms of the bond.

It appears from the declaration that the United States Land Company was incorporated under the laws of the State of Delaware, and, therefore, in order to present a good case, it must also be made to appear by the *narr.* that said company was, in 1908, authorized by the laws of that State to purchase shares of its own stock.

It is said in 6 *Ency. of Law,* 284 (2nd ed.), that, "It is well settled that the Courts of the several States will not take judicial cognizance of the laws of a sister State at variance with the common law, but will, in the absence of proof to the contrary, presume the common law prevailing in such other States to be the same as their own." This rule has been adopted in this State. *State, use of Allen,* v. *P. & C. R. R. Co.,* 45 Md. 41; *Dickey* v. *Pocomoke City Bank,* 89 Md. 280. But in the latter case this Court held that where a statute changes the common law of one State, "there is no good reason to presume that the Legislature of another State has done likewise."

Turning to the declaration, we find that it states the provision of the law in 1908 to be "that the shares of the stock of the corporation belonging to the corporation shall not be voted directly or indirectly," and it is from this provision that the pleader deduces the authority of the United States Land Company to purchase its own stock. That the provision referred to does not justify such a conclusion is apparent, for the Legislature of Delaware by "the shares of stock of the corporation belonging to the corporation" may have referred to the stock of the corporation which had never been issued and which, therefore, belonged to it, or to stock which it had acquired by other and lawful means and for a lawful purpose. We can not from such language deduce a statutory power to do what in this State would be held to be contrary to public policy and illegal.

If the law in force in 1908 did not give the company the power to purchase its stock, and the contract, was, therefore, illegal, the Act of 1909 did not change the character of

that contract. The validity of an agreement depends upon the law existing at the time it is made. In the case of *Stewart* v. *Thayer,* 168 Mass. 519, where the contract was entered into in 1893, and was held to be contrary to the existing law of Massachusetts, which was changed by the Statutes of 1894, the Court held that "the validity of the contract must be determined by the law as it existed in 1893, and by that law, as we interpret it, no concert of any kind could be licensed on the Lord's day except after sunset." And in 9 *Cyc.* 576, a long list of cases are cited in support of the statement "that if an agreement was illegal by statute or on grounds of public policy when it was made, it is not rendered legal by repeal of the statute or a subsequent change of the public or legislative policy."

It follows from what we have said that the appellant failed in his declaration to show his right to recover on said bond against the appellee, and that the judgment of the Court below must, therefore, be affirmed.

*Judgment affirmed, with costs.*