REED AND FIBRE PRODUCTS CORPORATION *v.*
JUSTIN J. ROSENTHAL.

JOHN G. WOELFEL *v.* JUSTIN J. ROSENTHAL.

JUSTIN J. ROSENTHAL *v.* EDWARD L. WARD,
RECEIVER.

*Corporation—Purchase of Own Stock—Conditions Precedent—
Contract with General Manager—Majority Stock-
holder as Party—Specific Performance
—Mutuality—Equity—Reten-
tion of Jurisdiction.*

Where a case is heard on demurrers to the bill of complaint,
the well pleaded allegations of the bill are to be taken as true.
p. 504

A written contract by which a corporation was to receive the
services of one as general manager for two years, for a specified
remuneration, which was executed by the corporation, by the
owner of a majority of its stock, and by such manager, *held*
valid.                                        p. 512

The rule formerly existing, that a corporation has no power
to purchase shares of its own stock, is, in view of Code, art. 23,
sec. 50, authorizing such purchases, no longer in force.
pp. 513, 514

In the case of what is on its face a valid contract by a corpo-
ration to purchase shares of its own stock, it must be presumed,
in the absence of a showing to the contrary, that any necessary
condition precedent to the making of a valid contract for this
purpose, such as authorization by the corporate charter or vote
of the stockholders, has been complied with.        pp. 514, 515

Where a contract, providing for the purchase from a corpo-
rate employee of shares of stock to be issued to him in pay-
ment for his services, was executed both by the corporation and

the holder of a majority of its stock, and it further provided that the obligations thereunder of the corporation and the majority stockholder should be joint and several, the contract could be enforced by the employee against either the corporation or such stockholder.                                      pp. 515, 516

Where a corporation contracted, as it had power to do, to issue stock in payment for services, the president, who owned a majority of the stock, could properly join in the contract, such joinder being in furtherance of the act of the corporation, and in no sense contrary or detrimental to the corporate interests as determined by it in its contract.                     pp. 516, 517

Authorized but unissued shares of stock of a corporation duly organized are in existence, in legal contemplation, at least in so far as they may be the subject of a contract for their purchase from the corporation, and such a contract may be specifically enforced by requiring their issuance and delivery.
pp. 517, 518

A contract by which a corporation agreed to issue stock to an employee at the end of two years, in part payment for his services during that time, was not lacking in mutuality for the purpose of specific enforcement by the employee, merely because at the inception of the contract it could not have been specifically enforced against him, and after he had fully rendered the services there was nothing further of which specific performance by him could be demanded.                              pp. 518-520

A contract by which a corporation agreed to issue stock to an employee in payment for services, and by which the corporation and a holder of the majority of its stock agreed, in case of a failure to continue the employment after a certain date, to buy from the employee the stock issued to him, *held* specifically enforceable against the corporation and the majority stockholder, by requiring the former to issue the stock and the latter to purchase it.                                       pp. 520, 521

Where equity had assumed jurisdiction to compel the specific performance of a contract by a corporation to issue shares of stock, it could retain jurisdiction for the settlement of all questions arising out of the subject-matter in controversy, to the extent of rendering a monetary decree against a majority stockholder who, together with the corporation, had agreed to purchase the stock so to be issued.                               p. 521

Where a corporate employee was entitled by contract to have shares of the corporate stock issued to him in payment for his services, he was, after full rendition of the services, the equitable owner of such shares, the corporation holding the legal title in crust for him.                                   p. 522

Where a receiver for a corporation was applied for and appointed after an employee of the corporation had become entitled, under his contract of employment, to the issue of shares of stock to him, the receiver was a proper party defendant to a suit by the employee for specific enforcement of the contract.

p. 522

*Decided July 9th, 1927.*

Appeals from the Circuit Court of Baltimore City (STEIN, J.).

Bill by Justin J. Rosenthal against the Reed and Fibre Products Corporation, John G. Woelfel, and Edward L. Ward, receiver of said corporation. From an order overruling a demurrer to the bill, filed by the two first named defendants, they appeal, and from an order sustaining a demurrer filed by the last named defendant, plaintiff appeals. Affirmed on defendants' appeals, and reversed on plaintiff's appeal.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Purdon Wright* and *G. W. S. Musgrave,* for the Reed and Fibre Products Corporation, and Edward L. Ward, receiver.

*Vernon Cook,* with whom was *Edward L. Ward* on the brief, for John G. Woelfel.

*Sylvan Hayes Lauchheimer* and *Malcolm H. Lauchheimer,* for Justin J. Rosenthal.

DIGGES, J., delivered the opinion of the Court.

The present record contains three appeals from an order of the Circuit Court of Baltimore City, dated March 23rd, 1927, overruling the demurrer of the Reed and Fibre Products Corporation and John G. Woelfel to the bill of complaint filed by Justin J. Rosenthal, and sustaining the demurrer on behalf of Edward L. Ward, receiver of the Reed and Fibre Products Corporation, interposed to said bill. The case being heard on demurrers to the bill of complaint, the well-pleaded allegations of the bill are to be taken as true for the purposes of this case.

The bill was filed by Rosenthal against Reed and Fibre Products Corporation, John G. Woelfel and Edward L. Ward, receiver of the corporation, and in substance alleges: That about the 23rd day of March, 1924, Woelfel, conducting business as the Rich Reed and Fibre Company, employed Rosenthal; that it was the intention of Woelfel at that time to form a corporation to take over the business theretofore conducted by him, and that Rosenthal should continue in the employment of said corporation. That in the month of April, 1924, Woelfel and his associates caused to be incorporated the Reed and Fibre Products Corporation, hereinafter referred to as the corporation, to take over the business aforesaid; and negotiations ensued between Rosenthal and the corporation as to the terms of his employment. That pursuant to said negotiations, terms were agreed upon, and in the month of May, 1924, a contract was drawn up embodying the terms of said employment, which was finally signed by all the parties thereto in July, 1924. This contract is filed with the bill as an exhibit and is in the following terms:

"This Agreement is made at Baltimore, Maryland, this .... day of May, 1924, between the Reed and Fibre Products Corporation, hereinafter called 'Company,' first party, Justin J. Rosenthal, hereinafter called 'Rosenthal,' second party, and John G. Woelfel, hereinafter called 'Woelfel,' third party.

"Woelfel has been instrumental in having incorporated Company, and in order to develop Company has employed, on behalf of Company and as officer of

Company, Rosenthal to act as general manager of said
Company for a period of two years. Said Rosenthal
is to be paid a salary of ten thousand dollars ($10,000)
per year for two years, but is to receive only seventy-
five dollars ($75.00) a week of said salary in cash,
the balance to be applied to the purchase of stock of
Company, the intent being to have said Rosenthal be-
come a stockholder in said Company and to pay for
his stock by his services to be rendered. Nothing
herein contained, however, is intended to issue stock
for services to be rendered, said stock only to be issued
for cash after the services have been fully rendered.

"Now, therefore, in consideration of the premises
and of the mutual covenants hereinafter expressed, said
parties do agree as follows:

"1. Company employs Rosenthal to act as general
manager of said Company for a period of two years,
beginning March 24, 1924, and ending on March 23,
1926. As compensation for said employment, Com-
pany agree to pay said Rosenthal the sum of Ten
Thousand Dollars ($10,000) per year. Of said sum,
Rosenthal is to receive the sum of three thousand,
nine hundred dollars ($3,900.00), payable in weekly
installments of seventy-five dollars ($75.00) each,
during the first year of said contract, and the same
sum during the second year of said contract. In addi-
tion to said sum of $75.00 a week, said Rosenthal is to
be credited upon the books of said Company with the
sum of one hundred and seventeen dollars and thirty
cents ($117.30) per week, but said Rosenthal shall not
be entitled to the receipt of said sum until he shall
have performed the services hereinafter set forth for
the period of one year. At the termination of each
year of the term of this contract, said Rosenthal shall
receive the sum of six thousand one hundred dollars
($6,100.00).

"2. Said Rosenthal shall act as general manager
of Company for said period of two years and shall
devote himself exclusively to the business of said Com-
pany. The duties to be performed by Rosenthal are
those which usually appertain to such employment.

"3.   At the expiration of the first year of said employment, Rosenthal agrees to purchase with the money payable to him as the balance of the salary, stock of said Company of the par value of $6,100.00 and at the end of second year, in the same manner, stock of the par value of $6,100.00, so that at the expiration of the two years of this contract, he shall be the owner of stock of said Company of the par value of twelve thousand two hundred dollars ($12,200). Should the said Rosenthal wrongfully leave the employment, during the term of this agreement, then any amounts to which he would have been entitled as unpaid salary which has not been used in the purchase of stock as provided for in this agreement shall be forfeited by said Rosenthal, said Rosenthal being entitled to said additional compensation of $6,100.00 per year only should said Rosenthal complete his services under this contract for the full term of one year. Should the employment of said Rosenthal be wrongfully terminated during the course of this contract by Company or Woelfel, then said Rosenthal shall be entitled immediately to any unpaid salary credited to him under this agreement and shall be under no obligation to purchase any of the stock of this Company with said unpaid salary.   Should this event, that is, the discharging of Rosenthal prior to the termination of this agreement by Company or Woelfel, or the breach of this agreement by Company, occur during the second year of this contract, if Rosenthal shall have already purchased stock of the Company of the par value of $6,100.00, Company and Woelfel hereby agree to repurchase from said Rosenthal said stock at its par value.

"The rights herein conferred upon Rosenthal upon breach of this agreement are in addition to any other rights which he might have at law or in equity.

"4.   At the expiration of the term of this agreement, should Rosenthal and said Company fail to agree upon a satisfactory continuation of his employment as General Manager of said Company for an additional

term, Woelfel and Company agree that they will purchase any of the stock of the Company obtained by Rosenthal under the terms of this agreement from said Rosenthal at the par value of said stock, said purchase to be for cash or for such other terms as are satisfactory to said Rosenthal. In the event that no other terms are agreed upon, cash shall be paid on the twenty-third day of March, 1926.

"5. The obligations of Company and Woelfel herein shall be joint and several.

"6. Company will execute such further assurances as shall be necessary to effectuate the intention of this agreement and shall do all things necessary to convey clear title to any stock which said Rosenthal may purchase hereunder.

"As Witness the seal of said Company and the hands of its President, and the hands and seals of second and third party.

"Reed and Fibre Products Corporation,

"By John G. Woelfel,

"President.

"Justin J. Rosenthal.  ·(Seal)

"John G. Woelfel.        (Seal)

"Attest: George Cook, Jr.,

   "Secretary.

"(Seal)

   "Witness: Geo. Cook, Jr.

"July 21, 1924."

The bill further alleges that Rosenthal faithfully complied with all provisions of the contract and performed all the duties therein required of him until the 23rd day of March, 1926, at which time, in order to give the parties to the said contract additional time to negotiate renewal in accordance with the terms of said contract, Rosenthal addressed to said corporation a letter reserving all rights in reference to the sale of stock to be issued to him as set forth in the contract, and consenting to an interim employment for two weeks. This letter demanded the issuance of the stock for the sum of $12,200 as provided by the contract, and the

terms of the said letter were accepted by the corporation and Woelfel.   This letter is also filed as an exhibit with the bill and is in terms following:

"March 23, 1926.

"Reed & Fibre Products Corporation:

"Inasmuch as my contract of employment as General Manager expires today and we have not agreed upon terms of a new contract, I hereby agree to continue as General Manager for the term of two weeks at the sum of one hundred and twenty-five dollars ($125.00) a week, it being distinctly understood, however, that this agreement is not to be construed as a satisfactory continuation of my employment within Paragraph 4 of my employment contract, and that should a satisfactory agreement not be reached during the two weeks herein provided for for a satisfactory continuation of my employment as set forth in Paragraph 4 of that agreement, all of the rights reserved to me under that agreement shall immediately go into effect.

"In other words, this period of employment for two weeks is merely to enable us to continue negotiations for my future employment satisfactory to all parties, and is in that respect merely a temporary waiver of my rights under the agreement of May ...., 1924.

"I have not yet had actually issued to me the $12,-200 stock provided for in the aforesaid agreement, and you are immediately to issue that stock to me so that I can be in position to dispose of it in accordance with the aforesaid agreement, should a satisfactory continuation not be agreed upon between us.

"Very truly yours,

"Justin J. Rosenthal.

"Accepted:

"Reed & Fibre Products Corporation,

"(Seal)

"By John G. Woelfel, Pres.

"John G. Woelfel.    (Seal)

"Melvin F. Stern."

That the said corporation has authorized and unissued capital stock sufficient to enable it to comply with its obligations to Rosenthal under said contract, without any amendment to its charter. That Woelfel owns over ninety per cent. of the capital stock of said corporation now issued and outstanding, and through the ownership of said corporate stock controls the entire policy of the corporation. That said Woelfel by a vote of his stock can and does control all of the directors of said corporation, by removal and by election of directors amenable to his wishes, and by vote of his stock can authorize all things which said corporation can do and is authorized to do under the laws of the State of Maryland, including the authorization of issuance of stock at less than par. That Woelfel is president of said corporation, with all the rights and powers of the president, and can call regular and extraordinary meetings whenever it may be necessary to have such meetings to carry on the affairs of said corporation and comply with the obligations imposed upon the corporation. That said corporation is a close corporation, having as stockholders only Woelfel and his associates; that the stock is not listed on any exchange and there is no market in which it can be purchased; that exclusive of the shares owned by Woelfel, less than fifty shares of such stock are outstanding.

That on or about the 23rd day of October, 1926, Woelfel filed in the Circuit Court of Baltimore City a bill against the said corporation praying for the appointment of a receiver, the dissolution of the corporation, and an injunction against the corporation preventing its officers from disposing of its assets. This bill set forth that Woelfel was the largest stockholder and creditor of the corporation; that the corporation was unable to meet its obligations as they matured, and was insolvent under the laws of the State of Maryland, though its assets were in excess of its liabilities. The corporation, on the same day upon which the bill was filed, pursuant to the direction of Woelfel, filed an answer to said bill, admitting the allegations of the bill and submitting to the action of the court; and upon said bill and answer a

decree was passed appointing Edward L. Ward receiver of the assets of said corporation, but no further action has been taken upon the prayers of said bill.

That in those proceedings Woelfel and the corporation state that the assets of the corporation total the sum of $59,-450.41 and the liabilities the sum of $48,232.83, excluding the liability of said corporation to Rosenthal on the contract referred to. The bill in this case further alleges that, by the inclusion of said liability of the corporation in the sum of $12,200 to Rosenthal, the said corporation is insolvent, and that, therefore, to issue the stock of said corporation in consideration of the obligation of the corporation to Rosenthal would require formal action by the board of directors and the stockholders, and the filing of a stock issuance statement in accordance with article 23, section 43, Code of 1924, inasmuch as said stock would be issued for less than the par value thereof.

That Woelfel has continually delayed taking the necessary corporate action to do all things necessary to issue Rosenthal the stock to which he is entitled, through the board of directors whom Woelfel controls, and by a vote of his controlling interest in the capital stock of the corporation; that Woelfel has finally filed a bill for receiver, in pursuance of a plan to defeat the rights of Rosenthal against said Woelfel under the contract, and to enable Woelfel to escape his just obligations to Rosenthal thereunder; that the purpose of Woelfel in filing the bill for receiver and the dissolution was in pursuance of his desire and plan to deprive Rosenthal of his rights against Woelfel by making it impossible for the corporation to issue the stock to which Rosenthal was entitled. The bill finally alleges that Rosenthal has no adequate remedy at law, and that the court should assume jurisdiction in the case in order to avoid a multiplicity of suits and a circuity of action, which would otherwise be necessary to do equity to Rosenthal.

The prayers of the bill are:

That the agreement between the corporation, Woelfel and Rosenthal be specifically enforced;

That the corporation may be decreed to issue to Rosenthal one hundred and twenty-two shares of the capital stock of said corporation of the par value of $100 per share, fully paid and non-assessable;

That Woelfel call a meeting of the board of directors and cause said directors, through his control, to adopt a resolution advising the stockholders to authorize the issuance of one hundred and twenty-two shares of the capital stock of the corporation, and call a meeting of the stockholders to take action thereon; and further, that Woelfel, at said meeting of stockholders, cause his stock to be so voted as to authorize the issuance of said stock, and cause said corporation to prepare and file a statement in the form prescribed by the State Tax Commission of Maryland, with reference to the issuance of stock, as provided by article 23, section 43, Code of 1924;

That Edward L. Ward be enjoined from proceeding as receiver with the dissolution of the corporation pending the termination of this suit and until after the issuance of the stock;

That the court having assumed jurisdiction proceed at equity and avoid the circuity of action by giving a monetary decree of $12,200, plus interest from March 23, 1926, against Woelfel in accordance with the terms of the contract.

There is also a prayer for general relief.

As stated, the corporation and Edward L. Ward, receiver, filed jointly their demurrer to the bill of complaint, Woelfel filing a separate demurrer on his behalf to the said bill. The grounds of these demurrers are, that the alleged contract is invalid and unenforceable against the corporation and the receiver thereof in a court of equity; that the alleged contract is not specifically enforceable in a court of equity; that the complainant has not stated in his bill such a cause as to entitle him to the relief sought and prayed for therein; that a court of equity has no jurisdiction to grant the relief prayed in said bill; that the complainant has a full, complete and adequate remedy at law; that said amended bill of complaint is multifarious as to parties and subject-matter.

From the foregoing statement of the allegations contained in the bill, it will be seen that the contract here sought to be specifically enforced was made, executed, and signed by three parties: First, by the corporation, by Woelfel as its president, with the seal of the corporation affixed, duly attested by the secretary thereof; second, by Justin J. Rosenthal, under seal, and, third, by John G. Woelfel, under seal; and being additionally witnessed by George Cook, Jr. It is therefore apparent that, in so far as its execution is concerned, this contract is the contract of the corporation and legally binding upon it. What is said in reference to the legality of the execution on the part of the corporation is true in respect to the execution by the other parties to the contract.

From a reading of the contract, together with the other allegations of the bill, it is clear that this contract was one by which the corporation was to receive the services of Rosenthal for the period of two years, these services to be rendered in the position of general manager, and in consideration of the salary or remuneration specifically set forth in the contract. We are aware of no legal obstacle which would prevent a corporation from making such a contract. By this contract it secures the services of an officer or employee, it being ostensibly for the mutual benefit of the corporation and Rosenthal, the corporation thereby receiving the services of Rosenthal, and in turn he being entitled to the salary or compensation agreed upon. Woelfel, for all practical purposes, being the corporation, owning more than ninety per cent. of the outstanding capital stock, knowing that what would be for the benefit of the corporation would also inure to his benefit as the owner of nearly all of its stock, signed the contract for the purpose of assenting to the performance of certain of its provisions by the corporation, thereby making it certain that Rosenthal would secure the benefits of his contract with the corporation, for which benefits his services had been rendered. The obligation imposed upon Rosenthal by the contract has been fully and faithfully complied with, and the corporation and Woelfel, its practical owner, have reaped

the benefits secured to it and him by the terms of the contract.

We have here a contract, duly executed by parties competent to contract, the terms of which are fair and reasonable, which has been fully and faithfully complied with by Rosenthal, and affirmed and ratified by the other parties thereto continuously over a period of two years, the full term of the contract, as evidenced by the acceptance of the service rendered. This presents a case which strongly appeals to a court of equity for relief, and it should be granted unless there be some well-settled legal or equitable principle which would be a bar.

The fourth paragraph of the contract, dealing with the contingency of Rosenthal and the corporation failing to agree, at the expiration of the term of the agreement, upon a satisfactory continuation of his employment as general manager for an additional term, provides that Woelfel and the company agree that they will purchase any of the stock of the company obtained by Rosenthal under the terms of the agreement from said Rosenthal at the par value of said stock, the said purchase to be for cash or on such other terms as are satisfactory to Rosenthal, and in the event that no other terms are agreed upon, cash shall be paid him on the 23rd day of March, 1926. It is objected by Woelfel and the corporation that this clause of the contract renders it null and void, for the reason that it is illegal for a corporation to purchase its own stock. There is cited in support of this contention *Maryland Trust Co. v. National Mechanics Bank,* 102 Md. 608. In that case Judge McSherry, speaking for the Court, in respect to the power of a corporation to buy its own stock, quoted with approval the opinion in the case of *Coffin v. Greenlees & Ransom Co.,* 38 Ohio St. 278, in which the court said: "But nevertheless we think the decided weight of authority, both in England and the United States, is against the existence of the power unless conferred by express grant or clear implication. The foundation principle upon which these latter cases rest, is that a corporation possesses no power except such as are conferred upon it by its

charter either by express grant or necessary implication."
Judge McSherry then goes on to say: "The reasons given
for the doctrine, apart from any express or implied statutory
prohibition, are, that the purchase of its own stock by a
corporation is not only a fraud upon the creditors who deal
with the corporation on the faith that the capital is paid
up, and a fraud upon and violation of the contract with
stockholders who do not consent, but is also a violation of
the charter."   We do not think the decision in that case
has any controlling force on the decision of the question now
presented, for the reason that by chapter 466 of the Acts of
1918, as amended by chapter 545 of the Acts of 1920, and
as finally amended by chapter 309 of the Acts of 1922, now
codified as section 50, article 23 of the Code, it is provided:
"Any such corporation thereunto authorized by its charter
or by the vote, at a meeting duly called and held, of the
holders of two-thirds of the shares of each class of stock out-
standing, including stock of any class to which the charter
purports to deny the right to vote, may purchase shares of
its own stock of any class."

By this statute it now is valid and lawful for a corpora-
tion to do what theretofore was unlawful, to wit, to purchase
shares of its own stock.   It is true that under the paragraph
above quoted a corporation can purchase shares of its own
stock only when authorized to do so by its charter or by the
vote at a meeting duly called and held of the holders of two-
thirds of the shares of each class of stock outstanding, and
unless one or the other of these conditions precedent had been
complied with, the purchase of its own stock by a corpora-
tion would be an invalid or *ultra vires* act.   The case being
heard on demurrer, there is nothing in the record to indi-
cate that either of these conditions had or had not been com-
plied with; but there being what on its face is a valid con-
tract of the corporation to purchase, upon certain contin-
gencies, shares of its own stock, we must, without any show-
ing to the contrary, presume that the necessary condition
precedent to the making of a valid contract had been com-
plied with.   *Hagerstown Brewing Co. v. Gates,* 117 Md.

355.  It was there said: "It is said in 5 *Ency of P. & P.*
95 : 'If the defendant wishes to interpose the defense of *ultra
vires* in an action by a corporation against him, he should
specially plead it.  And, in an action against a corporation,
the plaintiff need not set out in his complaint or declaration
the capacity of the corporation to make the contract sued
on.  Where the defense of *ultra vires* is allowable to a cor-
poration, the corporation must specially plead it.'  In 10
*Cyc.* 1115, Judge Seymour D. Thompson says: 'A general
presumption of right-acting attends corporations, the effect
of which is to place the burden of proving that a contract
made or an act done by a corporation was *ultra vires* upon
him who alleges that fact as the foundation of his action or
defense.' * * * In the case of *Railway Co. v. McCarthy,* 96
U. S. 258, it is said: 'When a contract is not on its face
necessarily beyond the scope of the power of the corporation
by which it was made, it will, in the absence of proof to
the contrary, be presumed to be valid.  Corporations are
presumed to contract within their powers.'  See also 3 *Ency.
of Ev.* 633, note 12; *Star Brick Co. v. Ridsdale et al.,* 36 N.
J. L. 229 ; *Elkins v. Camden etc. R. Co. et al.,* 36 N. J. Eq.
241; *Rider Life Raft Co. v. Roach,* 97 N. Y. 378."

What has been said in reference to the authority of the
case of *Maryland Trust Co. v. Mechanics Bank, supra,* is
applicable to the cases of *Schaun v. Brandt,* 116 Md. 560;
*Peninsula Trust Co. v. Johnson,* 128 Md. 535, and *Bear
Creek Lumber Co. v. Second Nat. Bank,* 120 Md. 566, cited
by the appellant corporation and Woelfel, all of those cases
having been decided prior to the acts of the Legislature now
contained in section 50, article 23, of the Code.  In other
words, prior to the said Act of 1918, and at the time of the
decisions relied on by Woelfel and the corporation, there was
no legislative authorization for a corporation purchasing its
own stock; whereas in 1924, at the time of the organization
of the corporation in this case, and also at the time the
cause herein was instituted, the said provisions of section
50 of article 23 were in force.

In addition, it is to be noted that by paragraph five of the

contract it is specifically provided that the obligations of the company and Woelfel under the contract shall be joint and several; the effect of which is that Woelfel agrees to do and perform the acts and things required by the contract severally and individually as well as jointly with the company. One of the things which Woelfel agreed to do is to purchase the stock which the company agreed to issue to Rosenthal, namely, one hundred and twenty-two shares at the par value of $100 per share, aggregating $12,200, at the expiration of the term of the agreement, that is, March 23rd, 1926, upon the failure of Rosenthal and the company to agree upon a satisfactory continuation of his employment as general manager of the company for an additional term. This agreement is specific, and provides that the purchase which Woelfel agrees to make of the stock from Rosenthal is to be for cash or for such other terms as are satisfactory to Rosenthal, and in the event no other terms are agreed upon, cash shall be paid on the 23rd day of March, 1926. Under this agreement Rosenthal was entitled to compel either the corporation or Woelfel, as he might elect, to purchase the stock which was agreed to be issued him for the debt, as shown by the books of the corporation, due him for services rendered. He has elected to proceed against Woelfel, and this we think he is entitled to do, without regard to whether or not the corporation could be compelled to purchase its own stock.

The second contention advanced by Woelfel and the corporation is that a contract by the president or majority stockholder of a corporation, purporting to bind the corporation to issue its stock upon certain terms, is illegal and unenforceable. Assuming, without deciding, this to be the law, we do not have such a case presented here. If we assume that the contract, so far as Woelfel was concerned, did undertake to bind him to have the corporation issue its stock to Rosenthal upon the terms set forth in the contract, and, being against public policy, was therefore illegal and void, it has no effect such as contended for in this case, because the contract was the legal act of the corporate entity, in addition to

the undertaking of Woelfel.   In other words, the corporation
having entered into the contract to issue its stock as therein
provided, there could be no sound public policy which would
render such a contract void, because, in addition to the corpo-
ration's agreement, the man who owned more than ninety
per cent. of its issued stock, and through such ownership
controlled its actions, also joined in the contract.   The prin-
ciple sought to be invoked is that a stockholder or director
of a corporation should at all times be untrammeled and free
to exercise his judgment in respect to all corporate matters
for the best interests of the corporation, and that to allow
a stockholder or director by contract to bind his action would
be contrary to this principle of freedom of action, and there-
fore illegal and void as contrary to a sound public policy.
This principle has found much favor with the courts in vari-
ous jurisdictions, and has been frequently applied.   In our
opinion, however, it cannot be successfully invoked where
the same contract entered into by the stockholder has also
been entered into by the corporation.   In such a case the
stockholder's act is in furtherance of the act of the corpora-
tion, and is in no sense contrary or detrimental to the inter-
ests of the corporation as determined by it in its contract.
If a corporation by contract agrees to do something which it
has the power to do, it is to be presumed that it acted for its
best interest, and the fact that its largest stockholder jointly
and severally entered into the same contract with the other
party to it cannot detract from the legality or enforcibility of
such a contract.   There can be no question of public policy
involved, for the reason that the stockholder has only bound
himself to do what the corporation has theretofore agreed
to do.   While it is true that the preliminary negotiations for
Rosenthal's employment were made by Woelfel on behalf of
the corporation, as shown by the preamble, nevertheless it
affirmatively appears that the corporation employed Rosen-
thal and executed the contract of employment in its corpo-
rate capacity.

Another contention is that a court of equity will not grant
specific performance of a contract to deliver property not

in existence at the time the contract was made. It is not necessary to discuss at length this proposition, further than to say that this principle, although sound when invoked in a proper case, in our opinion has no application to the one now under consideration. If it were held that a corporation, authorized under its charter to issue a definite number of shares of stock, could not make an enforceable contract for the sale of any of the authorized stock until same was issued, few corporations could successfully market their stock, because a stock subscription contract, by which the purchaser agreed to buy and the corporation agreed to issue to him a given number of shares, could not be specifically enforced against the corporation. Therefore few persons would desire to purchase a specific interest in the corporation, knowing that the contract for such interest could not be enforced. There can be no doubt that authorized but unissued shares of stock of a corporation duly organized are in existence, in legal contemplation, at least in so far as they may be the subject of contract of purchase, and a contract for their purchase may be specifically enforced by requiring their issuance and delivery.

It is further objected that specific performance should be denied because of lack of mutuality. This contention is answered by this Court, speaking through Judge Parke, in the recent case of *Liggett Co. v. Rose,* 152 Md. 146, wherein it is said: "While mutuality should exist from the beginning of the contract, there is a distinction drawn by the authorities between the mutuality of right and obligation and the mutuality of the equitable remedy; since the first is the binding efficacy of the agreement upon both the parties, and since the second concerns the right of both the parties to obtain a specific performance. 'If the first does not exist when the parties have gone through the form of concluding their contract, it can hardly be said that any agreement at all has been made; any subsequent act, omission or event which would create a mutuality of obligation, would virtually be the making of a new contract. The mutuality of the equitable remedy, on the other hand, does not belong to the

essence of the contract. An agreement may be perfect in its obligations upon both parties, and yet be of such a nature that one of them only could be compelled, by a decree of the court, to specifically perform. As the absence of this kind of mutuality does not render the agreement any less obligatory, it would seem on principle that if the quality originally lacking should be subsequently supplied, in any practical manner, before the commencement of the suit, or event, perhaps, before the hearing, the objection would then be. removed and a specific enforcement would be thus made possible.' *Pomeroy's Specific Performance* (3d Ed.), sec. 166, pp. 429, 430, secs. 171, 172, 173; *French v. Boston Nat. Bank,* 179 Mass. 404." See also *Hendler Creamery Co. v. Lillich,* 152 Md. 190; *Maryland Construction Co. v. Kuper,* 90 Md. 529.

In the present case there is a mutuality of right or obligation, and while it is true there is a contract for personal service, the contract provides that should Rosenthal breach his contract during the first year thereof he would forfeit all right to any compensation other than $75 per week; and in like manner, if at the expiration of one year he had received according to the terms of the contract $6,100 par value of the stock of the corporation, and breached the contract during the second year of its term, he would under its terms automatically forfeit the right to receive any further stock. It thus appears that the remedy, to which the corporation and Woelfel would be entitled in case of breach of contract by Rosenthal, is specifically provided in the contract and is self-executing; while on the other hand, if Rosenthal faithfully performed the whole of the contract on his part to be performed, as the record discloses he has done in this case, and, upon application by him for a completion by the other parties to the contract, it is refused, there can be no logical reason for refusing specific performance on the ground of want of mutuality. At the time the suit was brought there was nothing left to be done by Rosenthal, and therefore nothing which the corporation or Woelfel could ask a court to have him specifically perform. A court of equity is here

being asked to refuse specific performance against the corporation and Woelfel on the ground that at the inception of the contract they could not have compelled specific performance on the part of Rosenthal, while at the same time admitting that he had fully and faithfully performed his contract and they had received the benefits arising from such performance.  The learned chancellor denied the validity of such a defense, and we concur in his action.  The ultimate object of this proceeding is to require Woelfel to perform his part of the contract by purchasing the one hundred and twenty-two shares of the capital stock of the corporation, to which he is entitled, and to pay therefor the sum of $12,200.  This, by the plain and unambiguous terms of the contract, Woelfel agreed to do, upon the implied condition that the stock be delivered to him.  It is evident that he is now seeking to evade this contractual obligation by requiring Rosenthal to proceed at law, in which suit there might be interposed defenses not open in a court of equity, such as the failure on the part of Rosenthal to tender the certificate representing the shares of stock purchased.  It is therefore necessary to have specific performance against the corporation, requiring it to issue the stock to Rosenthal, that he may be in a position to deliver it to Woelfel.

The allegations of the bill, admitted by the demurrer, are that Woelfel owns more than ninety per cent. of the issued stock, and that there are not more than fifty shares thereof outstanding, other than those belonging to him.  Rosenthal is entitled to one hundred and twenty-two shares, for which he has paid par $12,200, as shown by the credits on the books of the corporation.  Rosenthal cannot go upon the open market and buy the one hundred and twenty-two shares to which he is entitled under the contract, and the only source from which these can be obtained is the unissued shares of the corporation.

We are of the opinion that the contract in this case is valid and enforceable; that the corporation should be required to issue to Rosenthal the one hundred and twenty-two shares of its stock as provided in the contract; that a

court of equity has jurisdiction in this case to require such issuance; and that Woelfel is obligated by the terms of the contract to purchase same at their par value for cash on March 23rd, 1926.

The remaining question is whether or not equity, having assumed jurisdiction to compel the specific performance of that part of the contract requiring the issuance of the shares of stock, can retain jurisdiction for the settlement of all questions which arise out of the subject-matter in controversy, and to the extent of rendering a monetary decree against Woelfel. This question must be answered in the affirmative. We do not understand it to be seriously contended to the contrary. This conclusion is amply supported by *Keighler v. Ward,* 8 Md. 254; *Shipley v. Fink,* 102 Md. 219; *Linthicum v. Wash., B. & A. Elec. R. Co.,* 124 Md. 263; *Jenks v. Clay Products Co.,* 138 Md. 551; *Waring v. National Savings & Trust Co.,* 138 Md. 367, and *Pomeroy's Eq. Jur.* (3d Ed.), pars. 231-234. In the case of *Linthicum v. Wash., B. & A. Elec. R. Co., supra,* it was said: "It has long been recognized in this state that where in a proper case, equitable jurisdiction has once attached it will be retained to the end, to give the parties seeking its aid full relief, even as to matters with regard to which it would not originally have had jurisdiction. *Popplein v. Foley,* 61 Md. 382; *Miller's Equity,* sec. 669; *Shipley v. Fink,* 102 Md. 220. And to the same effect are *Wilson v. R. R. Co.,* L. R. 9 Ch. 279; cited in *Fry on Specific Performance,* sec. 1310; *Speer v. Erie R. R.,* 68 N. J. Eq. 615. The test in all of these cases is, whether the court, in the particular case, ought in the exercise of its discretion to award specific performance, and if the case established is such a one, then if for any reason specific performance is refused, compensation for the damage or injury suffered may be awarded in lieu thereof, instead of compelling the party at additional cost to go into another forum and there litigate the same question.

Rosenthal having, in accordance with the terms of the contract, purchased, and by rendering fully the services therein required, paid in full to the corporation $12,200, the

par value of one hundred and twenty-two shares of its capital stock, he is the equitable owner of said shares of stock, and the equitable owner of such interest in the corporation as is represented by that number of shares. He became such owner before the application for or the appointment of the receiver. From and after the time he became such equitable owner, the corporation held the legal title to the shares of stock in question, in trust for Rosenthal. The receiver took possession of the effects and assets of the corporation subject to the right of Rosenthal to have the certificate representing the said stock issued to him. The seal, books and records of the corporation are in the physical possession and control of the receiver. In order to effectuate the relief to which we have decided Rosenthal is entitled, we are of the opinion that the receiver is a proper party defendant, and there was error in sustaining the demurrer of the receiver to the bill of complaint.

From the views herein expressed, it follows that so much of the order of March 23rd, 1927, as sustained the demurrer of the receiver, must be reversed, and in all other respects the order or orders must be affirmed.

> *In No. 45, order affirmed, with costs to appellee, and cause remanded, that further proceedings may be had in accordance with this opinion.*
>
> *In No. 46, order affirmed, with costs to appellee, and cause remanded, that further proceedings may be had in accordance with this opinion.*
>
> *In No. 47, order reversed, with costs to the appellant, and cause remanded, that further proceedings may be had in accordance with this opinion.*