525 A.2d 1076

Howard M. McGINLEY

v.

J. Alvin MASSEY, et al.

No. 140, Sept. Term, 1987.

Court of Special Appeals of Maryland.

June 3, 1987.

William McC. Schildt (Strite, Schildt & Varner, on brief), Hagerstown, for appellant.

William P. Nairn (John H. Urner and Urner, McGrory, Nairn, Barton & Schaefer, on brief), Hagerstown, for appellees.

Argued before GILBERT, C.J., and BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

The Circuit Court for Washington County entered summary judgment for the appellees, J. Alvin Massey and Margaret K. Massey, in their action against the appellant, Howard M. McGinley, to enforce his guaranty of payments due under a stock redemption agreement. Upon McGinley's appeal of that judgment to this Court, the parties elected to proceed on an expedited basis pursuant to Rule 1029. They have agreed to the following statement of the case:

Prior to April 18, 1985, J. Alvin Massey and Margaret K. Massey ("Appellees") were joint owners of three hundred (300) shares of common stock of Specialty Carburetion & Equipment, Inc. ("the Corporation"), a close corpo-

ration organized under the laws of the State of Delaware. At all times relevant to the subsequent dispute between the parties to this appeal, Howard M. McGinley ("Appellant"), a resident of Washington County, Maryland, was president and a stockholder of the Corporation.

On April 18, 1985, Appellees, Appellant, and the Corporation entered into a Stock Purchase Agreement ("the Redemption Agreement"), whereby the Corporation agreed to purchase or redeem all of Appellees' shares of common stock of the Corporation for the purchase price of $20,000.00.

The redemption purchase price was to be paid in installments as follows: (1) $528.70 upon execution of the Redemption Agreement; (2) thirty-six consecutive monthly payments in the amount of $264.35 commencing on May 1, 1985; and (3) $15,206.25 as a balloon payment on May 1, 1988. The Redemption Agreement provides that it shall be construed according to the laws of the State of Maryland.

The Redemption Agreement provides that Appellant shall pay any balance due from the Corporation in the event that the Corporation defaults in payment, ceases doing business, becomes insolvent, or declares bankruptcy. The guarantee provides that should the Corporation fail to cure any default within ten (10) days, the entire balance then outstanding would become due and payable by Appellant, as guarantor, within thirty days from his receipt of written demand for payment by Appellees.

At the time of the execution of the Redemption Agreement, the liabilities of the Corporation exceeded its assets and it was insolvent. On the date of the execution of the Redemption Agreement, the law of the State of Maryland and the law of the State of Delaware prohibited redemption of stock by a corporation when it was either insolvent or would become insolvent as a result of the redemption. Shortly after the execution of the Redemption Agreement, the Corporation defaulted. Appellant began making payments but thereafter stopped paying.

Appellees jointly filed a Complaint and Motion for Summary Judgment in the Circuit Court for Washington County against Appellant, as guarantor, for the balance of payments due under the Redemption Agreement. In a hearing on Appellees' Motion, the trial court granted the Motion on the issue of liability, but reserved its ruling on the proper amount of damages to be awarded Appellees. The parties subsequently stipulated to the amount in controversy, and the trial court entered judgment in favor of Appellees in that amount on December 29, 1986.

The appellant presents a two-pronged argument attacking the judgment of the circuit court:

A. The Redemption Agreement was illegal and unenforceable as against public policy because it was executed in violation of a statutory prohibition.

B. Since the Redemption Agreement itself was illegal and unenforceable, Appellant's guarantee of payments owing thereunder is null, void, and unenforceable.

■ We agree with the appellant that the Redemption Agreement was executed in violation of a statutory prohibition, whether we apply the law of Maryland, as provided for in the agreement, or the law of Delaware, the state under whose laws Specialty Carburetion & Equipment, Inc., was organized. At the time the Redemption Agreement was executed, "the liabilities of the Corporation exceeded its assets and it was insolvent." Under Md.Code (1985 Repl. Vol.), § 2–311(c) of the Corporations and Associations Article, "A corporation may not purchase or redeem any of its stock if the corporation is insolvent or the transaction would cause the corporation to become insolvent." Similarly, Del. Code Ann. (1983 Repl.Vol.), title 8, § 160(a)(1) provides:

(a) Every corporation may purchase, redeem, receive, take or otherwise acquire, own and hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares; provided, however, that *no corporation shall:*

(1) *Purchase or redeem its own shares of capital stock for cash or other property when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation,* except that a corporation may purchase or redeem out of capital any of its own shares which are entitled upon any distribution of its assets, whether by dividend or in liquidation, to a preference over another class or series of its stock if such shares will be retired upon their acquisition and the capital of the corporation reduced in accordance with §§ 243 and 244 of this title. Nothing in this subsection shall invalidate or otherwise affect a note, debenture or other obligation of a corporation given by it as consideration for its acquisition by purchase, redemption or exchange of its shares of stock if at the time such note, debenture or obligation was delivered by the corporation its capital was not then impaired or did not thereby become impaired; ... (Emphasis supplied.)

In light of the corporation's insolvency at the time, its agreement to purchase or redeem the appellees' shares of common stock violated both of the statutes just quoted.[1] As a general rule, contracts that violate statutes will not be enforced. *Queen v. Agger,* 287 Md. 342, 346, 412 A.2d 733 (1980). Such contracts when executed by a corporation are illegal and not merely *ultra vires. Downing Dev. Corp. v. Brazelton,* 253 Md. 390, 398–400, 252 A.2d 847 (1969); 7A *Fletcher Cyclopedia of the Law of Private Corporations* §§ 3400, 3580–83 (1978).

Satisfied that the first prong of the appellant's argument is correct, we now consider whether the second prong follows therefrom. The appellees, while conceding that the *corporation's* execution of the Redemption Agreement was

---

1. The appellees conceded this point in the agreed statement of the case, and the question of which state's law governs thus is immaterial to the resolution of this appeal.

illegal, argue that it does not necessarily follow that the *appellant's* guaranty of payment under the agreement is unenforceable. They cite three reasons relied upon by the circuit court as to why the guaranty portion of the agreement should be enforced:

A. Even if the Redemption Agreement was contrary to the statute, it would be a misapplication of the statute to use it to deny the appellees relief under the facts of this case.

B. The guaranty and the Redemption Agreement were two distinct and separable contracts, and the guaranty was separately enforceable.

C. The appellant should be estopped from denying the validity of the guaranty agreement.

In *Schaun v. Brandt*, 116 Md. 560, 82 A. 551 (1911), the Court of Appeals addressed essentially the same issue that we are presented with in the instant case. There, the United States Land Company (U.S. Land), a corporation organized under the laws of Delaware, had entered into an agreement to purchase 100 shares of its own capital stock from Schaun for $900. Brandt, as surety, gave his bond to secure payment of the purchase price in the event that U.S. Land defaulted on its obligation. U.S. Land defaulted, and Brandt refused to pay the purchase price. Schaun then brought suit against Brandt seeking to recover on the bond. On appeal from a judgment in favor of Brandt, the issue presented was whether Schaun's pleading (to which Brandt had successfully demurred) stated an action against Brandt on his bond. Specifically, the Court considered whether the declaration demonstrated that U.S. Land was authorized to purchase its own capital stock at the time of its agreement with Schaun.

In affirming the trial court's ruling, the Court observed that under the statutes then regulating Maryland corporations, "a Maryland corporation, in the absence of express authority, has no power to contract for the purchase of its own stock, and that a promise to pay money knowingly

loaned or advanced for that purpose can not be enforced."
116 Md. at 563, 82 A. 551. Not only was such a contract
unauthorized by statute, but it would be unenforceable
"because both the creditors and other stockholders of the
corporation may be injured by the unauthorized reduction of
its capital, and such a contract is contrary to public policy
and is illegal and void." *Id.* Notwithstanding this rule, the
appellant in *Schaun* argued that, in a suit against a surety,
the surety was estopped from denying the legality of the
principal's obligation. The Court, however, noting the dis-
tinction between an *ultra vires* contract and an illegal
contract, indicated that an obligation ancillary to the former
may sometimes be enforced but that an obligation incurred
in furtherance of an illegal contract was unenforceable.
Thus, the Court held that since U.S. Land's purchase of its
own stock was not authorized by law, Brandt's bond secur-
ing payment of the purchase price for Schaun's stock "was
given in furtherance of an illegal contract, and can not be
enforced." *Id.* at 564, 82 A. 551[2]

■ The Court's comments in *Schaun* are apposite to the
instant case. Here, as in *Schaun,* a Delaware corporation
executed a stock redemption agreement, and the corpora-
tion's obligation to pay the purchase price was secured by a
third party. The redemption agreement in both instances
was illegal as violative of a statutory prohibition. Just as
the appellant in *Schaun* could not maintain an action on the
bond given in furtherance of the illegal contract, we hold
that the guaranty in the case *sub judice* cannot be enforced
because the underlying redemption agreement was illegal.[3]

---

2. The court went on to discuss whether Delaware law then authorized
U.S. Land's purchase of its own stock and concluded that it did not.

3. The appellees do not attempt to distinguish *Schaun* except by citing
a later case, *R & F Products Corp. v. Rosenthal,* 153 Md. 501, 515, 138
A. 665 (1927), allegedly holding that *Schaun* no longer represented the
present state of the law due to subsequent legislative enactments.
Although the Court in *Rosenthal* refused to apply *Schaun* because of
subsequent legislation authorizing a corporation to purchase its own
stock, the general principle enunciated in *Schaun* remains valid when

We find persuasive authority for our decision in *Field v. Haupert*, 58 Or.App. 117, 647 P.2d 952 (1982), involving an action against the guarantor on a promissory note of a corporation. Field had received the note from the corporation in payment for the corporation's purchase of its own stock under a stock transfer agreement. Following the corporation's default in payments on the promissory note, Field instituted his action against Haupert, the guarantor. As an affirmative defense, Haupert asserted that at the time of the stock transfer agreement the corporation was insolvent, which rendered the agreement contrary to an Oregon statute prohibiting a corporation from purchasing its own shares while it is insolvent.[4] The trial court agreed and entered judgment for Haupert. The Oregon appellate court affirmed, holding that the corporation's purchase of its own stock when it was insolvent constituted an illegal act, as distinguished from an *ultra vires* act, that the defendant was entitled to assert the illegality as a defense to the plaintiff's action on the guaranty, and that the illegality was a complete defense to that action. 647 P.2d at 954.

The appellees seek to distinguish *Field* from the instant case based on the "reversed roles of the parties in this case." In *Field*, the plaintiff in the action on the guaranty had been the president of the corporation prior to the illegal stock purchase agreement. The *Field* court noted that the defendant guarantor had alleged that he guaranteed the promissory note on the basis of the plaintiff's representations that the corporation was in good financial condition. 647 P.2d at 953 n. 1. In contrast, the appellees point out that the appellant, the guarantor in this case, was a princi-

---

dealing with an obligation incurred in furtherance of an illegal contract.

**4.** The Oregon statute, Or.Rev.Stat. 57.035(5), provided:
No purchase of or payment for its own shares shall be made at a time when the corporation is insolvent or when such purchase or payment would make it insolvent.

pal stockholder and president of the corporation. As such, he was not deceived into giving his guaranty based on false or misleading information, as might have been the case in *Field*. Rather, the appellees contend, they are the innocent parties in this case, and the illegality of the Redemption Agreement should not be used to deny them relief.

We are unpersuaded. The *Field* court attached no significance to the positions of the parties in rendering its decision that the illegality of the stock purchase agreement was a complete defense to the action on the guaranty. We find no basis for doing so here. The appellees suggest that courts should "look at the policy and persons the statute was intended to protect" in determining whether a contract prohibited by statute is enforceable. Under their rationale, the guaranty in this case should be enforced because Md. Code, *supra*, § 2–311(c) of the Corporations and Associations Article is not intended to protect the officers and directors of a corporation, but, rather, its stockholders and creditors. It is the policy of our courts, however, not to aid someone who has entered into an illegal agreement. *Patton v. Graves*, 244 Md. 528, 532, 224 A.2d 411 (1966). Thus, even if the appellant is not the intended beneficiary of the statute, it does not follow that the appellees are entitled to have the illegal agreement enforced in their favor.

The appellees cite *Gannon & Son, Inc. v. Emerson*, 291 Md. 443, 435 A.2d 449 (1981), as supportive of the position they espouse. The Court of Appeals there held that an oral home improvement contract with a licensed contractor was not rendered unenforceable despite violations of two provisions of the Maryland Home Improvement Law. The contract was oral, in violation of Md.Code (1979 Repl.Vol.), Art. 56, § 265(b), and payment of part of the price was received by the contractor "prior to the signing of a home-improvement contract," in violation of § 261(a)(15). 291 Md. at 445, 435 A.2d 449. The Court relied on a "saving" clause in Art. 56, § 265(a) in holding that the oral home improvement contract was not to be deemed invalid solely because it was not in writing. *Id.* at 447–51, 435 A.2d 449. Construing

§ 261(a)(15) consistently with § 265, the Court then concluded that the violation of § 261(a)(15) did not render the contract unenforceable. *Id.* at 452–58, 435 A.2d 449. *Gannon & Son* thus involved a question of statutory construction. As there is no equivalent statutory construction problem in the case *sub judice,* the illegality of the Redemption Agreement stands as a bar to enforcing the guaranty.

■ The second argument advanced by the appellees for enforcing the guaranty is that it is enforceable separately from the Redemption Agreement. A promise of guaranty, however, cannot exist without reference to the obligation that it secures. When the principal obligation is illegal and therefore unenforceable, "enforcement [of the guaranty] would, in large measure, defeat the intention of the legislature or the policy of the law which declared the [principal] obligation illegal." 38 Am.Jur.2d *Guaranty* § 51, at 1055 (1968). Because the Redemption Agreement was illegal, the guaranty securing that agreement, even if viewed as a separate transaction, is not separately enforceable.

■ Finally, the appellees contend that the appellant is estopped from denying the validity of the guaranty agreement. They posit that they relied to their detriment on the appellant's "representation" that he would be responsible for the debt under the guaranty in the event that the corporation was insolvent. We have already held that the guaranty is not enforceable separately from the illegal redemption agreement. A corporation cannot be estopped to set up illegality as a defense to an action on a contract. 7A *Fletcher Cyclopedia, supra,* § 3611. We believe a guarantor of a contractual obligation illegally entered into by a corporation likewise cannot be estopped to set up that defense. *See Schaun v. Brandt, supra,* 116 Md. at 563–64, 82 A. 551. Moreover, even if that were not so, under the agreed statement of the case the appellant did not represent to the appellees that the corporation was solvent at the time the Redemption Agreement was executed. Absent such a representation, there could be no estoppel. *Prince*

*George's County v. Silverman,* 58 Md.App. 41, 60, 472 A.2d 104 (1984).

JUDGMENT VACATED;

CASE REMANDED FOR FURTHER PROCEEDINGS;

COSTS TO BE PAID BY THE APPELLEES.