EDWARD A. De WATERS *v.* F. LAMAR MERGLER

[No. 21, October Term, 1944.]

*Decided November 2, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Philip S. Ball,* with whom was *James J. Lindsay* on the brief, for the appellant.

*A. Freeborn Brown* and *Lester H. Crowther,* with whom was *Edward L. Parlett* on the brief, for the appellee.

CAPPER, J., delivered the opinion of the Court.

The appellee obtained a judgment upon a suit in assumpsit in the Baltimore City Court against the appellant in the sum of ten hundred thirty-eight dollars and six cents, from which appellant appeals.

The case originated in the Circuit Court for Harford County, Maryland, and was removed to the Baltimore City Court. The declaration alleged that appellee, a duly qualified electrician, on or about October 23, 1941, was employed by Harry F. Todd, the owner of a large building on the Philadelphia Dual Highway in Baltimore County, to furnish the materal and labor for electric wiring and electric fixtures in said building, which he was then converting into a restaurant and cafe, called at the time of the filing of the declaration, "The English Supper Club, Inc."; that appellee completed this work on July 20, 1942, at which time there was due and owing the amount claimed; that in the early part of August, 1942, appellee met appellant in Havre de Grace, Maryland, and informed him that he was going to file a mechanics's lien for said sum; whereupon, the appellant stated that he had then completed incorporation of The English Supper Club, Inc., and was its president and if appellee would forego filing any mechanic's lien against

the said property, that he, appellant, would assume the payment of said claim, in consideration of which said promise, appellee did forego filing a mechanic's lien against the property which he had a right to do at said time, but the appellant failed to pay said claim. Appellant filed the general issue pleas to this declaration.

The appellee testified in his own behalf that he had done the work as set forth in the declaration on a verbal agreement and he was to make his profit on the time and on the materials. He made up a statement showing the balance due, which was filed with the declaration. Some payments were made to him during the course of the work. He did the work in a good and workmanlike condition and no question was ever raised as to that. He further testified that in the early part of August, 1942, between seven-thirty and eight o'clock, he met appellant on the corner of Washington and St. Clair Streets in Havre de Grace while talking with Albert L. Girard, who had a similar claim against Todd; that appellant came up to them and inquired what their conversation was about and was informed that they were talking about filing a mechanic's lien against The English Supper Club, that they did not tell appellant the amount of the claims as they assumed he already knew that. The conversation further proceeded as follows:

"Q. What did Mr. De Waters say about the bill? A. Mr. De Waters said, don't file a mechanic's lien, I've got a lot of money tied up in the place and we may not be able to get a liquor license, we have just been incorporated, and he said, if you don't file your mechanic's lien I'll personally take care of your and Mr. Girard's accounts.

"Q. What, if anything else did Mr. De Waters say? A. He said he had fifty thousand dollars tied up in the place.

"Q. In what place? A. In the English Supper Club.

"(The Court) What did you tell him? A. I told him we wouldn't file a mechanic's lien, which we didn't."

Appellee further testified that he knew he had six months in which to file a mechanic's lien and on the occasion of his talk with appellant as above detailed, he still had approximately five months left. He admitted he had never discussed the matter with appellant again and that after appellant failed to pay the claim he put it in the hands of his attorney.

He testified he knew Todd owned the English Supper Club and learned he had paid around twenty thousand dollars for it; that Todd was enlarging and altering the red brick building that stood on the premises.

Appellee's testimony was corroborated by that of Albert L. Girard, a plumber who had done the plumbing work in the English Supper Club. His testimony concerning the conversation as to payment was practically the same as that of appellee. He said in response to a question:

"A. That we were discussing the—about the payment of the money for the work that had been performed on the English Supper Club and that we were arranging, Mr. Mergler and myself, were arranging to have a mechanic's lien gotten out and that at that time Mr. De Waters said not to do anything like that, that he would personally take care of our bills, Mr. Mergler's and myself, and we agreed to go along with him for a reasonable time."

There was no time stipulated when the bill was to be paid. The witness, however, testified that appellant said they were, just incorporated or incorporating The English Supper Club, and that "if we filed a mechanic's lien at this time it would cause him injuries and possibly cause him to lose the chance of obtaining a liquor license; that he was very heavily indebted—Mr. Todd was very heavily indebted to him for a large sum, and I asked Mr. De Waters how much money he had in it and he said about fifty thousand dollars."

Miss Elizabeth Hughes, who did general office work for Albert L. Girard from July, 1942, until May, 1943, testified over objections, that some time in the fall of

1942, Mr. De Waters met Mr. Girard in the latter's office and stated "that I'll see to it that you, speaking of Mr. Girard and Mr. Mergler, will get your money."

The appellant did not testify himself and produced no evidence on his behalf.

The appellant contends that appellee's evidence was insufficient to make out a case which was enforceable under the Fourth Section of the Statute of Frauds because the promise to pay appellee's claim was an oral one and was not supported by a sufficient consideration. He says there was a failure of consideration for the promise to pay because it was not shown that Todd was the owner of the property or that it was improved to one-fourth of its value.

There was positive evidence that when the contract for furnishing the fixtures was made, Todd was the owner of the property and that the work was all performed and completed as aforesaid.

Appellant cited the case of *Thomas v. Delphy,* 33 Md. 373, 379, to the effect that a promise to pay the debt of a third person upon consideration of forbearance to file a lien, must be in writing unless clearly shown that the promise was made for the sole benefit of the promisor and not for the third person, and for a new consideration moving from the creditor to the promisor. The evidence abundantly shows that appellant when he made the promise to pay this debt was heavily interested in The English Supper Club. He stated that he had fifty thousand dollars invested in it and that the filing of a mechanic's lien might prevent him from getting ·a liquor license. Considering the necessity of having a liquor license in order to be able to successfully operate such a club as this, it seems to us that it was a valuable consideration to appellant for appellee to forego filing the mechanic's lien and that this was an original promise to pay which does not come within the Statute of Frauds.

It is said in American Jurisprudence, vol. 49, p. 426, sec. 74, that:

"The purpose of the provision of the statute of frauds which requires a promise to answer for the debt, default,

or miscarriage of another to be in writing was not to effectuate, but to prevent wrong. * * * Cases sometimes arise in which, although a third party is the primary debtor, the promisor has a personal, immediate and pecuniary interest in the transaction, and is therefore, himself a party to be benefited by the performance of the promise. In such cases the reason which underlies and which prompted this statutory provision fails, and the courts will give effect to the promise.

"Although a promise is in form one to pay the debt of another and the performance thereof may incidentally have the effect of extinguishing the liability of another, if the main purpose and object in making the promise is not to answer for another, but directly to subserve the interest of the promisor, the promise is not within the statute. The theory is that if the promisor is himself acquiring property or other pecuniary benefit, he is engaging to pay not the debt of another, but his own."

To the same effect is the case of *Small v. Schaefer,* 24 Md. 143, 161, where it is said: "Wherever the main purpose and object of the promisor, is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise, to pay the debt of another." Also *Little v. Edwards,* 69 Md. 499, 16 A. 134; *Oldenburg & Kelley v. Dorsey,* 102 Md. 172, 62 A. 576; *Bowen v. Tipton,* 64 Md. 275, 1 A. 861; and *East Baltimore Lumber Company v. Israel Congregation,* 100 Md. 125, 127, 59 A. 180.

It is argued further on the part of the appellant that there is no showing that the mechanic's lien is a valid one because it is not definitely shown that the property was repaired or improved to the extent of one-fourth of its value. We do not believe, in view of the peculiar circumstances of this case, that it was a necessary prerequisite of recovery for appellee to show that the lien was a valid one. The consideration relied upon by appellant was not so much the validity of the lien as it was the very fact that filing any lien would prejudice his efforts to obtain a liquor license. It may be assumed, we think,

from the record, that appellant knew the amount of appellee's claim and also knew the value of the property when the contract for its improvement was made. He knew that he had $50,000 in the property and must have known at the time of his promise that appellee had the right to file a valid mechanic's lien. Certainly, the time for filing the lien had not expired when the promise to pay was made and appellee could have filed a lien even though for some reason it might in later legal proceedings be declared invalid. The consideration to appellant was the fact that the appellee in return for the agreement to pay his claim, agreed to and did in fact forego his right to file the lien. According to appellant's statement, the filing of a lien would have injuriously affected his application for a liquor license. The main purpose of the promise of appellant was not to answer for the debt of Todd, but to remove all obstacles to the granting of a liquor license to the English Supper Club in which he was vitally interested.

There is nothing in the case to show the lien was invalid and in this respect we think it is not controlled by the case of *Dipaula v. Green,* 116 Md. 491, 82 A. 205. In this case it was clear that Dipaula had no legal right to a mechanic's lien because his claim rested upon furnishing materials to erect a house in Baltimore City and by the very terms of Article 63, Sec. 1, Code of 1904, in force at that time, there was no right to file any mechanic's lien in Baltimore City for materials so furnished, but only for work done in connection therewith. In the Dipaula case, it does not appear that the promisor derived any benefit or advantage for his promise to forego filing the lien.

As to exceptions Nos. 1, 2, 3, and 4 concerning a conversation between appellant and Albert L. Girard in the latter's office some time in the fall of 1942, we think this evidence was properly admitted. It disclosed a direct admission on the part of appellant that he was personally liable for appellee's claim. Even though his admission included the claim of Girard, not involved in this

appeal, that is no reason, it seems to us, why the admission is not admissible.

Exception No. 5 concerns the admission in evidence of the incorporation of The English Supper Club. This certificate is not included in the record and we, therefore, are unable to examine it or ascertain its date. It is not disputed that appellant was financially interested in The Supper Club both before and after its incorporation, and we cannot see how he suffered any injury by the admission of this certificate in evidence.

Exception No. 6 (erroneously referred to in the record as Exception No. 7) covers the rejection of appellant's A, B, C, and D prayers. The A prayer recited the undisputed facts proved by appellee in the case and asked the jury to find for appellant if they found that appellee gave no new consideration for the promise of appellant; that appellant derived no personal benefit from said promise; and that the promise was not made in writing. As we have pointed out, the record is conclusive, without any denial on the part of the appellant, that the new consideration moving to appellant was the fact that his application for a liquor license would not be jeopardized by the filing of any lien and that for this reason he did derive a personal benefit from his promise to pay appellee if he would withhold filing any lien against the English Supper Club. This prayer was properly rejected.

Appellant's B prayer was to the effect that if the jury found that appellee did not give up his claim against Todd but at the same time looked to Todd for payment, the verdict of the jury shall be for the appellant unless they shall find that the promise of the appellant was made to the appellee in writing.

As we have already stated, where the promise to pay the debt of another is an original undertaking, such as this case, there is no necessity for it to be in writting. The appellant bound himself to pay by his own undertaking and without regard to whether or not appellee might be able to secure payment from Todd. This prayer was properly rejected.

What we have said in this opinion is sufficient to show that appellant's C and D prayers were rightly refused.

Finding no error in the record in this case, the jurgment of the lower Court is affirmed.

*Judgment affirmed with costs to appellee.*