# LEDFORD CONSTRUCTION COMPANY
## *v.* SMITH

[No. 270, September Term, 1962.]

*Decided June 11, 1963.*

598

The cause was argued before Brune, C. J., and Hammond, Prescott, Marbury and Sybert, JJ.

*William J. Howder,* with whom was *Grover Lee Small* on the brief, for appellants.

*William E. Brooke,* with whom were *Shriver & Brooke,* on the brief, for appellee.

Brune, C. J., delivered the opinion of the Court.

The appeal in this case is from a monetary decree in an equity suit entered by the Circuit Court for Prince George's County against the appellant, Stanley B. Ledford (Ledford), and in favor of the appellee, A. H. Smith, trading as A. H. Smith Sand & Gravel Co. (Smith), for $27,231.42, and costs. The amount just stated was the amount of the indebtedness of George E. Lloyd Company, Inc. (Lloyd), to Smith as of May 30, 1959, representing the balance then due on open account for materials sold by Smith to Lloyd, for the payment of which the court found that Ledford (and others) had assumed liability. (The others, against whom the same decree was entered, did not appeal.)

Three questions are raised by the appellant: first, should the demurrer to the bill of complaint have been sustained; second, was a written instrument purporting to be a guaranty of payment of the Lloyd indebtedness to Smith an enforceable guaranty under the Statute of Frauds; and third, was this document, together with evidence adduced at the trial, sufficient to constitute a contract so enforceable.

The demurrer was to the original bill and was not renewed in any way after the amended bill was filed. Since there was little difference in substance between the original and the amended bills, we shall assume that the points raised by the demurrer have not been waived so as to preclude review.

Both bills sought the appointment of a receiver for the defendant Lloyd, sought an accounting from Ledford and another defendant, Ledford Construction Company (Ledford Co.) of funds of Lloyd, alleged to have been commingled

with those of Ledford Co. and sought to set aside as conveyances in fraud of creditors of Lloyd all transfers of assets from Lloyd to Ledford Co., and a monetary judgment or decree against Ledford and other individual and corporate defendants for $33,292.07, the alleged amount of Lloyd's indebtedness to Smith, payment of which Ledford and others interested in Lloyd were alleged to have assumed. The amended bill alleged (what the demurrer had pointed out) that Lloyd's charter had been forfeited, and it sought to impose a trust upon Ledford, his wife and another as the last directors of Lloyd and to require them to render an accounting as such of all corporate assets. The basis upon which a transfer in fraud of creditors was alleged was a commingling of funds of Lloyd and of Ledford Co. in what is called an "intercorporate bank account" and the removal by Ledford of large sums of money belonging to Lloyd, which were used for the operation of Ledford Co., thereby depriving the plaintiff as a creditor of Lloyd of assets which should properly have been applied towards Lloyd's indebtedness to the plaintiff. Though we think the allegations of the bill were rather indefinite, we think that they were sufficient to sustain equity jurisdiction as to an accounting between Ledford Co. and Lloyd and as to the transfers alleged to have been in fraud of creditors of Lloyd. We think it unnecessary to determine whether the allegations were sufficient to sustain the application for the appointment of a receiver. Smith was a simple creditor of Lloyd and he did not allege insolvency and did not seek the dissolution of Lloyd. *Del-Mar-Va v. Boss Mfg. Co.,* 230 Md. 477, 187 A. 2d 693 (1963) ; *Frigidraft, Inc. v. Michel,* 198 Md. 509, 84 A. 2d 695; Code (1939), Art. 23, § 97; Code (1957), Art. 23, § 80. Nor need we determine the sufficiency of the allegations seeking an accounting from the last directors of Lloyd following the forfeiture of the corporation's charter.

Before the present case came on for hearing a receiver had been appointed for Lloyd in another proceeding, and the question of the appointment of a receiver in this case had therefore become moot. Also, the Chancellor was of the opinion

that any duties of the last directors as trustees to render an accounting were superseded by the appointment of a receiver. The testimony failed to establish that funds of Lloyd had been diverted to Ledford Co. and indicated that on the contrary Lloyd was indebted to Ledford Co. The Chancellor was of the opinion that if there were any occasion to pursue further the state of accounts between the two corporations, this could be done by the receiver. The net result was that he dismissed the bill insofar as all purely equitable relief was sought and entered money decrees against Ledford and other individuals and against Lloyd.

We think that the appellant's contention that there was no equitable jurisdiction and hence that the equity court had no jurisdiction to make a monetary award against the appellant on the basis of his guaranty, even if (contrary to his other contentions) the guaranty were enforceable, cannot be sustained. The claim for an accounting and the attack on the allegedly fraudulent conveyances from Lloyd to Ledford Co. which Ledford was charged with effecting were enough to show equity jurisdiction to entertain the suit. *Dormay Construction Corporation v. Doric Co.,* 221 Md. 145, 156 A. 2d 632; Code (1957), Art. 39 B, §§ 1, 9; *Lipskey v. Voloshen,* 155 Md. 139, 141 A. 402; *Atlantic Lumber Corporation v. Waxman,* 162 Md. 191, 159 A. 593.

"* * * [W]hen a court of equity has once rightfully assumed jurisdiction, it will retain its jurisdiction in order to settle all questions that might arise out of the subject in controversy and give the complainants complete relief, even in those respects in which it would not have had jurisdiction originally, thereby preventing a number of conflicting proceedings concerning the same subject. *Keighler v. Ward,* 8 Md. 254, 266; *Reed & Fibre Products Corporation v. Rosenthal,* 153 Md. 501, 521, 138 A. 665." *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 224, 37 A. 2d 305. See also *Linthicum v. W. B. & A. Elec. Rd. Co.,* 124 Md. 263, 273, 92 A. 917; *Eastern Woodworks, Inc. v. Vance,* 206 Md. 419, 112 A. 2d 231; *Dormay Construction Corporation v. Doric Co., supra.*

The appellant's second and third contentions will be consid-

ered together. The evidence shows that he and the other two individuals who joined in executing the instrument purporting to be a guaranty of payment of Lloyd's indebtedness to Smith were all interested in Lloyd. Ledford himself held 51% of the stock of Lloyd. The instrument is on the letterhead of Lloyd, is directed to A. H. Smith, the appellee, is dated May 28, 1959, and the body of it reads as follows:

"This is to certify that the undersigned assume responsibility for the account of George E. Lloyd Co. through May 30, 1959, jointly and individually."

It is signed by Ledford and two other individuals and their signatures are witnessed, but the instrument is not under seal.

There is testimony to show the following: Lloyd was heavily indebted to Smith at the end of May, 1959, that it was working on some contracts and needed more material to go ahead with them, and that some money was expected to be coming in as payments for work performed. Smith was thoroughly dissatisfied with the Lloyd account and there had been negotiations between Smith and Ledford and others interested in Lloyd. Smith agreed orally, in return for the above guaranty, to forbear action against Lloyd and to furnish a limited additional amount of credit to Lloyd—up to about $2,000.00—and further to help Lloyd out by having a company which Smith controlled (L. & S. Construction Company) give Lloyd some work to do, with the expectation that out of payments made by this company to Lloyd, Lloyd would make payments to Smith to reduce its indebtedness. This arrangement was carried out for several months, but it did not solve the problem and in October, 1959, Smith refused any further credit or assistance to Lloyd. This suit followed about four months later.

We think that although the oral agreement shown is far from being so definite as it might have been, it nevertheless does show consideration for the guaranty—at least forbearance and some additional credit—and that it may be inferred, in the absence of any specific agreement as to the period of forbearance, that it was to be for a reasonable time. It also

appears that the agreement was carried out on Smith's part. He went along in the effort to work out the situation for over four months, his construction company did give Lloyd some work, and during the period between May 30 and October 20, 1959, Smith extended additional credit amounting (at the end of the period) to $2,051.08.

It is obviously true, as the appellant contends, that the guaranty does not constitute a complete contract and that it does not state the consideration for which it was given.

We may observe at this point that the contract would appear to be one in which the interest of Ledford was such that it is at least questionable whether the Statute of Frauds has any application to it. See *De Waters v. Mergler,* 183 Md. 574, 39 A. 2d 668; and 2 Corbin, *Contracts,* § 366, on the "Leading Object" rule.

Apart from that, and assuming the instrument here to be within the provisions of the Statute of Frauds requiring that in the case of a promise to be answerable for the debt, default or miscarriage of another person, there be a memorandum thereof in writing signed by the party to be charged, we think that the instrument is sufficient. There is a statutory exception as to cases falling under this provision of the Statute, which sets them apart from cases falling under the general rule, which, as stated in *Sinclair v. Weber,* 204 Md. 324, 332, 104 A. 2d 561, requires that the memorandum shall state "with reasonable certainty, (1) each party to the contract * * *, (2) the land, goods or other subject-matter to which the contract relates, and (3) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made [citing 1 *Restatement, Contracts,* Sec. 207 and a Maryland case]." The first two requirements are clearly met here—the identity of the parties and the indebtedness of Lloyd to Smith as of May 30, 1959. The statutory exception pertains to the third requirement. Code (1957), Art. 35, § 36 provides that

> "Where an action, suit or other proceeding is brought
> for the purpose of charging any person on a special
> promise to be answerable for the debt, default or

> miscarriage of another person, it shall not be necessary to show that the consideration for such promise is in writing."

This statute is applicable here, and under it the consideration can be shown, as it was in this case, by parol evidence. The evidence to prove the consideration is, we think, also sufficient to prove the existence of a valid contract, which was not so uncertain as to be void for indefiniteness. A somewhat similar situation was presented in *Hieston v. National City Bank of Chicago,* 132 Md. 389, 104 A. 281, and the guaranty there involved, which did not state the consideration, was duly signed by the party to be charged. The actual consideration was shown by a letter from the bank delivered upon receipt of the guaranty, but that letter was not signed by the party to be charged. We think the *Hieston* case is controlling here.

*Decree affirmed; costs to be paid by the appellant.*