STATER et ux. *v.* DULANY, Assignee

[No. 415, September Term, 1963.]

*Decided October 23, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*E. O. Weant, Jr.,* with whom were *G. Edwin Robertson* and *Brown & Weant* on the brief, for the appellants.

*William B. Dulany,* with whom was *James W. Davis* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Carroll County which dismissed a petition by mortgagors to enjoin a foreclosure sale of their real property. The principal question presented is the validity of the mortgage given to the appellee's assignor, the Ridge Pike Bond and Mortgage Corporation, by the appellants, Edwin S. Stater and H. Jacquelyn Stater, his wife.

In 1962 the Staters owned an unimproved lot of land in Carroll County, Maryland, and, desiring to erect a house thereon, they visited a sample home of the Ridge Pike Lumber Company (Lumber Company), in Thurmont, Maryland, in October or November, 1962. The Lumber Company, which has its home office in Conshohocken, Pennsylvania, sells precut or prefabricated homes. After several meetings between the Staters and Lee R. Saylor, of Thurmont, the local sales representative for the Lumber Company, the Staters decided in November or early December, 1962, to purchase a particular style precut house, completed an application for credit, and gave Saylor the deed to their land to aid in the credit investigation. Soon thereafter the Staters were notified that their credit application had been approved. They then executed an installment contract, dated December 12, 1962, covering the purchase, Saylor representing the Lumber Company in the transaction. The cash purchase price stated in the contract was $10,700.00, which included the cost of the precut lumber and building materials, as well as the sum of $1,373.00 which was to be placed by the

Lumber Company in an escrow account for disbursement to contractors (apparently to be procured by the Staters) as they completed preliminary work necessary for the erection of the dwelling. Under the agreement, the Lumber Company was to erect the outside or "shell" of the home and the Staters were to finish the inside on their own. However, the contract provided for the payment of 156 monthly installments of $122.08 each, to pay off the "time balance" price of $19,044.48. The appellants paid $100.00 down when they executed the contract, which was credited therein. The Staters also executed a mortgage on their land to the Ridge Pike Bond and Mortgage Corporation (mortgagee), owner of the Lumber Company. The mortgage was acknowledged by the Staters on December 15, 1962, although it is dated December 10, 1962. The affidavit as to consideration, made by the president of the mortgagee, is dated December 19, 1962, and the mortgage was recorded January 11, 1963. It provided for the payment of $19,044.48 in 156 monthly installments of $122.08 each.

The credit officer of the Lumber Company testified, without contradiction, that the escrow account of $1,373.00 was established "at the time the contracts [the installment contract and the mortgage] were signed and sent back to the office." Four checks were drawn on the account to pay contractors for such work as the digging and construction of a foundation, construction of a sewer system, etc. The Staters admitted that they sent the contractors' bills to the Lumber Company and that it forwarded covering checks to the Staters or the contractors.

The precut house was delivered to the Staters in two "packages" at two different times. The first package contained materials for the outside and the second for the inside of the house. The appellants, on February 5, 1963, signed a certificate of completion for Saylor, indicating that the "shell" was completed. In July 1963 the Staters moved into the house.

Under the terms of the mortgage, payments were to commence 60 days after its execution. However, it is admitted by the Staters that they have made no payments to the mortgagee. On September 18, 1963, the mortgagee made a short assignment of the mortgage to the appellee, an attorney, for the pur-

pose of foreclosure. On October 16, 1963, the appellee docketed suit to foreclose the mortgage, filing with it a statement of mortgage debt claiming the principal sum of $10,700.00 plus simple interest from date of $267.50. Public sale of the property was scheduled for November 14, 1963. Appellants, on October 23, 1963, filed a petition to enjoin the sale, alleging that the mortgage was one to secure future advances, that it did not comply with Code (1957), Art. 66, sec. 2, and was therefore not a lien on the property. The appellants further alleged that they were fraudulently induced to execute the mortgage. The lower court issued a show cause order, appellee answered, testimony was taken, and the petition was dismissed on November 12, the court holding that the mortgage was not one for future advances and that no fraud had been shown. The property brought $12,000.00 at public sale on November 14, 1963, and a report of sale was filed. An order nisi directing ratification unless cause to the contrary be shown on or before December 23, 1963, was published. On December 9, 1963, the appellants appealed to this Court from the order dismissing their injunction petition, and on December 19, 1963, they filed exceptions to the sale, but no hearing was held thereon pending this appeal.

I

The appellants contend that the mortgage is one to secure future advances (namely, the building materials [1]) and that since it does not state on its face the amounts of the future advances and the times when they were to be made, it does not comply with Code (1957), Art. 66, sec. 2, and is therefore not valid as a lien against the property. On the other hand, the appellee contends that no future advances were to be made under the mortgage since, at the time of its execution, the mortgagee assumed the obligation of the mortgagors to the Lumber Company under the installment contract, and placed the $1,-373.00 in escrow for disbursement to contractors, and that these constituted present consideration for the mortgage.

---

1. Future advances may be made in materials, instead of money. Brooks v. Lester, 36 Md. 65, 69 (1872).

We agree with the appellee in so far as the setting up of the escrow account is concerned. The evidence shows that the account was established for the benefit of the mortgagors at the time of the delivery of the mortgage, and that it subsequently was disbursed to contractors upon the submission of their bills by the mortgagors. In comparable cases we have held that such action by the mortgagee amounted to a present consideration for the mortgage and that Art. 66, sec. 2, was not applicable. See *Bld'g. & Loan Assn. v. Lumber Co.,* 168 Md. 199, 178 Atl. 214 (1934) ; *Loan & Savings Assn. v. Tracey,* 142 Md. 211, 120 Atl. 441 (1923). Cf. *Toney Schloss v. Union Federal,* 233 Md. 224, 196 A. 2d 458 (1964) ; *Western Nat'l Bank v. Jenkins,* 131 Md. 239, 101 Atl. 667 (1917). Therefore, since there was at least a present consideration of $1,373.00 for the mortgage, to this extent, at least, the mortgage was a lien against the property and the sale thereunder could not be enjoined. *Leister v. Bank of Westminster,* 199 Md. 241, 249, 86 A. 2d 393 (1952) ; *Silver v. Benson,* 227 Md. 553, 560, 177 A. 2d 898 (1962).

However, this still leaves open the status of that portion of the mortgage debt over and above the amount placed in escrow. This suit is entirely between the mortgagors and the mortgagee, and no subsequent lienors or creditors of the mortgagors, and no question of the relative priority of claims, are involved here. For those reasons we think it unnecessary to decide whether the mortgage was given to secure future advances, for even if it were so intended, the equity court has jurisdiction over the subject matter of the suit and therefore has the power to afford complete relief as between the parties.

In *Ledford Const. Co. v. Smith,* 231 Md. 596, at 600, 191 A. 2d 587 (1963), Chief Judge Brune, for the Court, quoted the appropriate rule as stated in *McKeever v. Realty Corp.,* 183 Md. 216, at 224, 37 A. 2d 305 (1944) : "* * * [W]hen a court of equity has once rightfully assumed jurisdiction, it will retain its jurisdiction in order to settle all questions that might arise out of the subject in controversy and give the complainants complete relief, even in those respects in which it would not have had jurisdiction originally, thereby preventing a number of conflicting proceedings concerning the same subject." See the sev-

eral cases cited in *Ledford Const. Co.* And, in such cases, the equity court may render a money decree where appropriate for the settlement of questions which arise out of the subject-matter in controversy. *R. & F. Products Corp. v. Rosenthal,* 153 Md. 501, 521, 138 Atl. 665 (1927); *Dormay Corp. v. Doric Co.,* 221 Md. 145, 151-154, 156 A. 2d 632 (1959); *Allview Acres v. Howard,* 229 Md. 238, fn. 3, p. 247, 182 A. 2d 793 (1962).

Equity has jurisdiction of the subject-matter of the foreclosure of mortgages. Code (1957), Art. 16, sec. 100; Maryland Rule W72 b. Thus, since the foreclosure sale under the mortgage involved herein was properly held, as we found above, the circuit court is empowered to determine the proper total sum due from the mortgagors to the mortgagee, and to award such amount to the mortgagee. In so doing, the Chancellor should take such testimony as may be necessary to determine the appellants' contention that the house was not properly erected, in order to decide whether or not the appellants are entitled to any credit against the mortgagee's claim. These issues may properly be decided upon exceptions to the auditor's account, or in other appropriate proceedings in the case.

II

The appellants maintain that they were induced by fraud on the part of the mortgagee to execute the mortgage. While their claim is that they did not know they were signing a mortgage, their testimony was not consistent. They both admitted signing several papers, that they read what they signed, and that the signatures on the contract and on the mortgage appeared to be theirs. Mr. Stater stated he knew that one of the papers was intended to give the mortgagee "security on the property" for the debt, and that they would lose the property if they did not make the payments. We find no sufficient evidence in the record to sustain any allegation of fraud, and therefore cannot find that the Chancellor was clearly wrong in this respect. Rule 886 a. It would seem that the reason that the mortgagors did not make any payments was due to their dissatisfaction with the finished house, not because of any fraud in execution.

## III

The appellants finally request this Court to rule on their exceptions to the sale of their property. No hearing was held on these exceptions by the lower court pending this appeal, and, of course, no decision was made thereon. Therefore, under Rule 885, the exceptions are not before us in this appeal. It may be that most, if not all, of the exceptions will be disposed of by what we have said, or by the proceedings on the auditor's account.

*Order affirmed; case remanded for further proceedings consistent with this opinion; appellants to pay the costs.*