VERMILYA-BROWN COMPANY, INC., ET AL. *v.*
DALE DALLAS, INC.

[No. 611, September Term, 1966.]

*Decided November 8, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*James G. Boss,* with whom were *Cory, Boss & Rice* on the brief, for appellants.

*Carleton U. Edwards, II,* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This bit of flotsam rose to the surface in the wake of a multi-million dollar apartment project. The record is voluminous. The amount in dispute here is $3,165.00. The principal participants are:

Vermilya— A joint venture consisting of Vermilya-Brown Company, Inc. and Clarence W. White Associates, Inc., both New York corporations. The venture is the general contractor for Berkshire in erection of the apartment complex.

Berkshire— Park Berkshire No. 1, Inc., a Maryland corporation, the owner of the 15 acre tract near Suitland, in Prince George's County, upon which the apartment complex was built.

Dallas— Dale Dallas, Inc., a Maryland corporation, the sub-contractor for the drywall work on the apartment buildings.

Travelers— The Travelers Indemnity Company, a Connecticut corporation, which furnished the bond in the amount of $24,380.00 when the lien of Dallas was "bonded off" thereby becoming, in effect, the principal defendant in this case.

Colton— Herbert S. Colton, Esq., one of counsel for Vermilya, a member of the Maryland bar with offices in the District of Columbia.

Bourne— Richard Bourne, Esq., a member of the firm of Beatty and McNamee, counsel (along with Colton) for Vermilya who withdrew from the case several weeks before trial.

Boss— James G. Boss, Esq., a member of the firm of Cory, Boss and Rice, of Prince George's County, who entered his appearance for Vermilya on 12 August 1966.

In June 1961 Berkshire contracted with Vermilya for the erection of 336 apartment units. Vermilya in turn contracted with Dallas to furnish labor and material for the drywall work. As the job progressed it developed that certain ducts that were to be installed in the ceilings between the joists had to be dropped below the ceilings. The labor and material required for covering the ducts came to $3,165.00.

Dallas also did some other extra work for which it claimed $10,442.03. Vermilya admitted that $9,203.79 of this amount was correct but, for a time, disputed the rest. Later on, it seems, $10,442.03 was recognized by Vermilya as the correct figure.

In January 1963 Dallas, becoming apprehensive because amounts due it were not being paid when due, filed a mechanics' lien in the amount of $21,754.21. Not long thereafter Dallas. threatened to file another mechanics' lien for the $10,442.03. At about this time Vermilya was having money trouble and in order to resolve its difficulties it became necessary to get rid not only of Dallas' lien but the liens of many other sub-contractors.

On 19 March 1963 Vermilya and Dallas entered into a stipulation which provided, in part, as follows:

"Whereas, the Lienor asserts a further claim over and above the amount of the aforesaid lien against the Contractor in the amount of Ten Thousand Four Hundred Forty-two Dollars and Three Cents ($10,442.03), hereafter called the 'excess amounts,' being the amount claimed, over and above the amount of the lien, to complete the contract and extras approved, authorized and completed as of March 6, 1963, for which excess amount the Lienor intends to file a further mechanics lien but which excess amount the Contractor claims to be Nine Thousand, Two Hundred Three Dollars and Seventy-nine Cents ($9,203.79), and

"Whereas, the Contractor desires to bond the lien heretofore filed and avert the filing of a further mechanics lien by the Lienor by the payment of Fifteen Thousand ($15,000.00) Dollars, to be applied to whatever excess amount should be finally found to be due the said Lienor, and the amount of such payment, if any, over and above said amount finally found to be due to be credited on the mechanics lien heretofore filed herein, and

"Now, Therefore, it is stipulated between the parties hereto as follows:

"1. The Contractor will pay the Lienor the sum of Fifteen Thousand ($15,000.00) Dollars, to be applied

to the payment of the excess amount mentioned above when finally determined, and any balance remaining after such application to be credited on the amount of the lien filed herein, which lien amount the contractor admits to be due and owing.

"2. The Lienor simultaneously herewith has consented to the petition for the filing of a corporate surety bond in the amount of Twenty-four Thousand, Three Hundred Eighty ($24,380.00) Dollars for the purpose of bonding off said lien pursuant to the Rules of this Court.

"3. The acceptance of the aforementioned payment and agreement to the filing of said bond shall not in any way prejudice or affect the rights of the Lienor against any of the parties hereto in future proceedings to enforce the lien heretofore filed or the lien which may hereafter be filed for the excess amount except to the extent such payment is applied to the whole or partial satisfaction of the said liens, provided, however, that no further lien shall be filed and no further action shall be taken by the Lienor prior to April 10, 1963."

While attorneys for Vermilya and Dallas were engaged in the negotiations which resulted in the stipulation, and entirely unknown to them, Dallas presented its bill ($3,165.00), dated 4 March 1963, to Vermilya for the extra labor and material expended in covering the ducts and on the same day this was marked "accepted" and handed back to Dallas by C. W. Furst, Vermilya's superintendent.

As required by the stipulation the bond was furnished by Travelers, the $15,000.00 was paid to Dallas, and Dallas released Berkshire's land from the operation and effect of its lien.

Two months later, 24 April 1963, Vermilya filed a mechanics' lien against Berkshire for the balance ($482,376.14) claimed to be due it. Dallas says that included in Vermilya's lien claim is the $3,165.00 covering its extra work. We have been unable to identify the $3,165.00 as part of the $482,376.14. However, there seems to be no dispute about it so we shall make it so.

On 30 August 1963 Vermilya filed a bill of complaint, signed by Colton and Bourne, for the enforcement of its mechanics'

lien. Dallas answered on 18 February 1964. Eleven months later, 15 January 1965, Dallas filed a bill of complaint to enforce its own mechanics' lien of $21,754.21. 28 June 1966 having been established as the trial date, Bourne filed a motion for a continuance alleging that because of difficulties in communicating with Vermilya's New York counsel he was unable to prepare for trial. Judge Powers granted the motion and set 22 August 1966 as the new trial date. On 4 August 1966 Bourne moved for leave of court to withdraw his appearance for Vermilya. His motion was granted on 15 August 1966. Meanwhile, on 10 August 1966, Boss entered his appearance for Vermilya. Boss informally sought another postponement, which was refused. On 22 August 1966 Judge Bowie ordered the consolidation of the two cases and opened the trial, which was continued on 23, 24 and 29 August 1966.

The $3,165.00 item was "hotly litigated." Indeed, most of the trial was given over to testimony for and against it. Oddly enough, however, when the bill of 4 March 1963 bearing Furst's signature was offered in evidence, Boss said he had *no objection,* whereupon it was admitted. Judge Bowie ultimately resolved the conflict in favor of Dallas.

It should be observed that the lien and the extras not in dispute ($21,754.21 + $10,442.03) amount to $32,196.24. When this is reduced by the $15,000.00 paid by Vermilya the balance is $17,196.24. Judge Bowie added to this the $3,165.00 which explains the amount of the money decree ($20,361.24) he ordered to be entered against Vermilya and Travelers. He also allowed interest ($4,411.60) from 18 January 1963, the date Dallas filed its lien so that the total award was $24,772.84.

I.

The first of Vermilya's two contentions is that the stipulation is, in effect, a final settlement between Vermilya and Dallas, establishing Vermilya's total indebtedness at $21,754.21, the amount of the lien, plus an amount to be determined, not less than $9,203.79 nor more than $10,442.03. We do not agree.

We see nothing in the stipulation suggesting that the parties contemplated or intended a final settlement of all accounts standing between them. Their obvious and only concern was to clear the record of existing liens and to forestall the filing of

further liens for the three week period ending 10 April 1963, by which time, presumably, the refinancing of the project would have been completed. Since the stipulation was negotiated by counsel, and indeed signed by counsel, one would expect to find therein the customary paragraphs reciting the "remise, release and quitclaim" of their respective clients' claims against each other if, in fact, that had been intended. And there is additional significance in the fact that at trial Vermilya strove mightily to defeat Dallas' claim not only on its merits but also by asserting as a setoff $16,409.31 in "back charges" and "late charges." Another setoff of $17,000.00 was alleged to have arisen out of a prior contract between the parties. An even clearer recognition of the fact that Dallas' claim was not foreclosed by the stipulation is found in the statement of counsel for Vermilya that he had "no objection" to the admission of Dallas' bill of 4 March 1963 for $3,165.00 and in the fact that Vermilya included it in its lien claim against Berkshire.

Vermilya cites *Bloom v. Graff,* 191 Md. 733, 63 A. 2d 313 (1949) in support of its claim that the stipulation foreclosed Dallas' claim. In *Bloom* the parties stipulated, in open court, that the verdict, if for the plaintiff, should be $896.09. This Court reversed the ensuing $250.00 verdict and entered judgment for $896.09. We think the disparity between *Bloom* and the case at bar is so clear as to make further comment unnecessary. Our scrutiny of the record has persuaded us that Judge Bowie cannot be said to have been clearly in error in rejecting Vermilya's claim of setoff and allowing Dallas' bill of $3,165.00. There was no appeal by Vermilya from the rejection of its claims of setoff. Having acquired jurisdiction as a court of equity Judge Bowie retained it for the purpose of rendering a money decree arising out of the issues litigated before him. *Stater v. Dulany,* 236 Md. 399, 204 A. 2d 71 (1964) ; *Ledford Const. Co. v. Smith,* 231 Md. 596, 191 A. 2d 587 (1963) ; *Mc-Keever v. Realty Corp.,* 183 Md. 216, 37 A. 2d 305 (1944).

## II.

Vermilya's second and final contention arises out of the refusal of the request of Boss for a continuance. Vermilya recognizes that the granting of such a request is in the sound dis-

14

cretion of the court. *Brooks v. Bast,* 242 Md. 350, 219 A. 2d 84 (1966) and *Thanos v. Mitchell,* 220 Md. 389, 152 A. 2d 833 (1959). But, it argues, that discretion was abused by Judge Bowie. We think not. Bourne's June request for a continuance was granted and it must be assumed that the new trial date, 22 August, set by Judge Powers, was made known by Bourne to Vermilya, or at least to Colton who, from the beginning had been, and still was, Vermilya's counsel of record. If the need for more time had been then as crucial as Boss now claims it to have been, one would expect to see in the record a proper motion reciting the reasons for the continuance and supported by an appropriate affidavit. Since it is contended that more time was needed to round up absent witnesses, it should be noted that Maryland Rule 527c requires such a motion to be supported by an affidavit.

III.

We think Judge Bowie incorrectly included the $3,165.00 in his decree against Travelers. This item was clearly beyond the scope of the bond filed pursuant to the stipulation. His decree should have been in favor of Dallas and against Vermilya and Travelers for $17,196.24 with interest from 18 January 1963; and in favor of Dallas and against Vermilya for $3,165.00 with interest from 2 September 1966.

> *Decree in favor of Dallas against Vermilya and Travelers for $24,772.84 and costs, reversed.*
>
> *Decree entered here in favor of Dallas against Vermilya and Travelers for $17,196.24 with interest from 18 January 1963.*
>
> *Decree entered here in favor of Dallas against Vermilya for $3,165.00 with interest from 2 September 1966.*
>
> *Costs to be paid by Vermilya.*