HENRY E. BILLINGSLEY ET UX. v. THOMAS S.
LAWSON AND J. EDWARD WHITE,
SUBSTITUTE TRUSTEES ET AL.

[Nos. 273 and 459, September Term, 1979.]

*Decided October 18, 1979.*

The cause was argued before LISS, COUCH and MACDANIEL, JJ.

*Carlton M. Green* for appellants.

*John C. Joyce* and *Richard O. Duvall,* with whom were *Harry M. Stern* and *Duckett, Orem, Christie & Beckett* and *Dunnells, Duvall, Bennett & Porter* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

Henry E. Billingsley and Ann Billingsley, his wife, appellants, applied to Jefferson Federal Savings and Loan Association of Washington, D. C. (hereinafter Jefferson) to obtain refinancing of an existing loan on their residence in Bethesda, Maryland for the purpose of paying certain business expenses and an existing second trust on their property. On October 25, 1974, the appellants executed a promissory note in the amount of $125,000.00 secured by a deed of trust on the residence to Suburban Trust Company, Trustee. By the terms of the note, the appellants agreed to pay the principal sum plus interest at the rate of ten per cent per annum, the sums payable in monthly installments. The note provided that at the option of Jefferson in the event of a default the entire debt, plus interest, advances and charges would become due and payable.

On November 17, 1976, the appellants received a letter by registered mail which advised them that the note was then $4,328.74 in arrears; that payment of the overdue amount was requested by November 29, 1976; and that foreclosure was a possibility if the payment was not received. The appellants were again advised of their delinquency on February 8, 1977. When payment was not forthcoming Jefferson instructed Suburban Trust to proceed with a foreclosure proceeding which was filed in the Circuit Court for Montgomery County on April 7, 1977. Thomas S. Lawson and J. Edward White were appointed as substitute trustees on March 4, 1977; and the foreclosure suit was captioned in their names. They appear in these proceedings as appellees.

On the same date that the foreclosure suit was docketed, counsel mailed the appellants a copy of the foreclosure advertisement proposed to be published during the ensuing weeks. The advertisement was published in the "Suburban Record" on April 22, 29, and May 6, 1977. Another copy of the advertisement was mailed to the appellants by counsel for the trustees on April 30, 1977. The record shows that the advertisement conformed to the requirements of law by describing the property and improvements, the terms of sale, and the location in the Montgomery County Land Records of the deed of trust containing a metes and bounds description.

On May 9, 1977, the day scheduled for sale, the appellants *pro se* moved the Circuit Court to enjoin the sale. A proffer was made that Mr. Billingsley had been led to believe on the Friday preceding the sale that the sale would be stopped if he tendered $5,000.00 prior to the sale. Acting on this representation, appellants obtained a $5,000.00 cashier's check and tendered it to the substitute trustees on the morning of the sale, but the substitute trustees refused to accept the check or stop the sale. The chancellor denied the motion for injunction to stop the sale without a formal hearing on the ground that the "mortgagor has not paid the remaining balance under the secured indebtedness but has only offered to make payments current." The sale thereupon proceeded and the property was purchased by the second trust holder (Jefferson) for $140,000.00. Appellants filed exceptions to the sale and a hearing was set for November 29, 1977. That hearing was continued by the trial court when Mrs. Billingsley presented a physician's certificate reciting that Mr. Billingsley was in critical condition completely paralyzed as a result of the Guillain-Barré Syndrome which had caused him to be confined to the National Naval Medical Center.

On February 2, 1978, the chancellor (Latham, J.) was presented with a consent order executed by Ann Billingsley for herself and as attorney in fact for Henry Billingsley to which was attached a general power of attorney appointing Mrs. Billingsley to act on Mr. Billingsley's behalf. The order presented to the chancellor indicated that the Billingsleys had

agreed to withdraw their exceptions to the sale and had consented to its final ratification.

On June 26, 1978, Henry Billingsley filed a petition to set aside the February 2, 1978 consent order (Mrs. Billingsley was not a party in this petition). Also on June 26, 1978, both appellants filed a new set of exceptions to the foreclosure sale that raised issues not in the original exceptions. Additionally, they filed a motion to set aside the foreclosure sale and a petition to declare the deed of trust null and void.

Trial was had on December 28 and 29, 1978 before Judge Mathias in the Circuit Court for Montgomery County. Appellants initially moved that Judge Mathias remove himself from the case contending that he had previously violated their constitutional rights and that the chancellor might be liable to the appellants if he ruled against them. The trial judge appropriately denied this frivolous motion and the hearing then proceeded.

In their various exceptions and motions, the Billingsleys, in hunter's parlance, shot mustard seed in an attempt to kill a stag. They contended that their grounds for vacating the February 2, 1978 consent order included the fact that the power of attorney was null and void; that Mr. Billingsley was mentally incompetent at the time he gave his wife the power of attorney upon which she based her authority to withdraw the exceptions to the sale and consent to the ratification; that the February 2, 1978 order was entered without notice to him and without his consent and its entry denied him due process; that Mrs. Billingsley had signed while she was under a severe mental strain, believing her husband was dying; that her consent was not voluntary and that her actions were a nullity when she purported to act for Mr. Billingsley.

In support of their exceptions to the sale and the motion to set it aside, they used the same tactics, alleging the advertisement of sale did not satisfy Maryland Rule W 74 2 (b) because it only ran for 17 days, not 21 days; that the Maryland foreclosure law is unconstitutional; that no settlement occurred within five days of final ratification; that the injunction was improperly denied; that the loan had not been properly accelerated; that the power of sale was

improperly exercised because there had been no default; that the deed of trust was void because the affidavit of disbursement was irregular; and that the forfeiture of the appellants' property violated the Soldiers and Sailors Civil Relief Act. Appellants also filed on the same date a Petition to Declare the Deed of Trust Null and Void on the basis that the affidavit of disbursement was irregular and usurious.

Appellees, in response to appellants' motion to vacate the final order of ratification of the foreclosure sale, entered by the chancellor pursuant to the consent order of February 2, 1978, contended that the order was enrolled and as required by Rule 625 a could be vacated only by proof that the order of ratification was the product of fraud, mistake, or irregularity.

After a two-day hearing that included extensive testimony and legal argument, Judge Mathias signed an order dated the 3rd day of January, 1979 in which he found "that the petitioners failed to produce sufficient evidence of fraud, irregularity or mistake under Maryland Rule 625 a to convince the court to vacate the enrolled consent order of February 2, 1978." He thereupon denied the petition to vacate the consent order; the petition to declare the deed of trust null and void; the exceptions to the foreclosure sale; and the motion to set aside the foreclosure sale. Appellants promptly noted an appeal from Judge Mathias' order which in this Court became Case No. 273 of the September Term of 1979. While that appeal was pending, appellees sought and obtained a writ of possession of the property involved and an order requiring the appellants to post a supersedeas bond in the amount of $250,000.00 to preclude the execution of the writ of possession. An appeal from that order to this Court was noted and that case became No. 459 of the September Term of 1979. The appeals in both cases have been consolidated. Mercifully, the questions to be decided by this appeal have been narrowed somewhat to the five issues raised in appellants' brief. They are:

1. Whether the appellants offered sufficient proof of fraud, mistake and irregularity to require the chancellor to

vacate the February 2, 1978 consent order and to set aside the foreclosure sale?

2. Whether the trial court excluded relevant evidence at the hearing on the appellants' motions?

3. Whether the Maryland foreclosure procedure is unconstitutional and thereby denied appellants due process upon the facts in this case?

4. Whether the trial judge erred by granting the writ of possession in this case?

5. Whether the trial court erred when it ordered the appellants to file a supersedeas bond, and whether the failure of the appellants to file such a bond rendered the appeal as to the writ of possession moot?

## 1. and 2.

Maryland Rule 625 a which governs this case states:

> For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity.

It is clear that this rule encompasses final orders of ratification in foreclosure cases. *Hughes v. Beltway Homes, Inc.,* 276 Md. 382, 347 A.2d 837 (1975).

As the consent order of ratification was signed on February 2, 1978 and the motion to vacate on June 26, 1978, the appellants must show "clear and convincing proof" of fraud, mistake or irregularity in order to be entitled to relief under Rule 625 a. *See Accrocco v. Splawn,* 264 Md. 527, 532, 287 A.2d 275 (1972). Furthermore, "[T]he power of the court to revise and control an enrolled judgment is no longer discretionary." *Ventresca v. Weaver Bros.,* 266 Md. 398, 403-04, 292 A.2d 656 (1972).

The Court of Appeals has said that a litigant seeking to set aside an enrolled decree must prove extrinsic fraud and not

intrinsic fraud. The Court explained the distinction between these two types of fraud in *Schwartz v. Merchants Mortgage Co.,* 272 Md. 305, 308-09, 322 A.2d 544 (1974) when it said:

> [A]n enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are *"intrinsic"* to the trial of the case itself. Underlying this long settled rule is the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation ... This policy favoring finality and conclusiveness can be outweighed only by a showing "that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy." [Citation omitted.]

Fraud is extrinsic when it actually prevents an adversarial trial but it is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit, that truth was distorted by the complained of fraud. *Maryland Steel Co. v. Marney,* 91 Md. 360, 46 A. 1077 (1900).

Appellants argue that the fraud in this case included the alleged promise by the agent of the bank that if $5,000.00 were paid prior to the date of sale, the foreclosure sale would be cancelled. This testimony was denied under oath by the bank's representative. The allegation, even if true, is not an act of extrinsic fraud, and when viewed in the proper time context, *i.e.,* that the alleged false promise was made on May 5, 1977 and the consent decree entered almost a year later, then the complained of conduct clearly does not justify vacating of the enrolled decree. Nor would the alleged failure of the purchaser at the sale to comply strictly with the terms of sale amount to such a fraudulent act as would require the

ratification order to be vacated. We find nothing in the record which establishes either intrinsic or extrinsic fraud.

The appellants next contend that there were five "irregularities" in the foreclosure proceedings which require reversal of the lower court's order. They are: the sufficiency of the advertisement; the acknowledgment on the power of attorney; the fact that the deed to the property was not conveyed within five (5) days after ratification of the sale; Mr. Billingsley's alleged lack of mental capacity when the power of attorney was granted, and the duress which Mrs. Billingsley was under when she consented to the February 2, 1978 decree.

None of these circumstances amounts to the type of irregularity contemplated by Maryland Rule 625 a. The Court of Appeals in *Weitz v. MacKenzie,* 273 Md. 628, 630-31, 331 A.2d 291 (1975) defined an "irregularity" as follows:

> Under our cases, an irregularity which will permit a court to exercise revisory powers over an enrolled judgment has been consistently defined as the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not be done [citations omitted.] As a consequence, irregularity in the contemplation of the Rule, usually means irregularity of process or procedure [citations omitted], and not an error, which in legal parlance, generally connotes a departure from truth or accuracy of which a defendant had notice and could have challenged. [citations omitted.]

It has been held that the dismissal of a case without giving notice as required by the Maryland Rules, *Mutual Benefit Society of Baltimore, Inc. v. Haywood,* 257 Md. 538, 263 A.2d 868 (1970), and the failure of a clerk to send the required notice upon the entry of a default judgment, *Maryland Lumber v. Savoy,* 286 Md. 98, 405 A.2d 741 (1979); *Calvert Fire Ins. Co. v. Reick,* 39 Md. App. 620, 387 A.2d 789 (1978), are the types of irregularities contemplated by Rule 625 a.

Appellants have alleged no such irregularity of court process or court procedure.

Appellants offer as proof of irregularity their contention that the advertisement of the foreclosure sale did not run for three successive weeks as required by Rule W 74 a 2 (b) (i) which states: "For the sale of real estate or chattels real — at least once in each week for three successive weeks, the first such publication to be not less than fifteen days prior to sale and the last such publication to be not more than one week prior to sale." Appellants contend that this section means the notice of sale must have run for at least twenty-one days. They offer in support of their contention, *Fleisher v. Grice*, 245 Md. 248, 226 A.2d 153 (1967). Our own reading of that case convinces us that it is factually inapposite to the case *sub judice*. Nor do we find support for appellants' contention in *Byrd v. Day*, 138 Md. 442, 114 A. 480 (1921) which interpreted a statute with language clearly distinguishable from the rule we here consider. We conclude that the advertisement as required by the rule was published once in each of three successive weeks with the first publication not less than fifteen days prior to sale and the last not more than one week prior to sale. Finally, even if we assume, *arguendo,* that appellees did not comply strictly with Rule W 74 a 2 (b) (i) this "irregularity," if any, is not one of those requiring a remedy pursuant to Rule 625 a.

Appellants next attack the acknowledgment on the power of attorney executed by Mr. Billingsley. The power of attorney was admitted into evidence without objection in the trial below and the issue of the validity of the affidavit was not raised at that time. It may not be raised for the first time on appeal. Rule 1085.

Appellants' contention that the appellees and the subsequent purchasers of the property failed to comply strictly with the terms of sale has no merit. As the judge below stated: "Once the sale was ratified and confirmed, they had the authority to make such changes or modifications as they felt were proper." None of the modifications agreed upon by the parties would go to the validity of the sale as originally made, particularly as there is no indication the

modifications in any way affected the appellant's liability to appellee Jefferson.

Appellants cite as their final evidence of "irregularity" their contention that Henry Billingsley lacked sufficient mental capacity to execute the power of attorney which accompanied the consent to the ratification order of February 2, 1978. While it is conceded that Mr. Billingsley was, in fact, in a horrendous physical condition at the time of the execution of the power of attorney, those difficulties did not affect his mental capacity. *See Robinson v. Robinson,* 178 Md. 623, 16 A.2d 854 (1940); *Mead v. Gilbert,* 170 Md. 592, 185 A. 668 (1936); *Mobley v. Mobley,* 149 Md. 401, 131 A. 770 (1926). The chancellor concluded, "the medical evidence before me is overwhelming that he was competent and knew what he was doing" when the appellant executed the power of attorney. That conclusion on the facts may not be set aside unless we find the chancellor's conclusion clearly erroneous, which we do not. Rule 1086.

Appellants also argue that Mrs. Billingsley executed the consent decree under duress and that this amounts to an "irregularity." Again we find no merit to the argument. The record clearly demonstrates that there was no evidence of any wrongful acts by the trustees which induced the execution of the consent. It is significant that Mrs. Billingsley did not join in the petition to vacate the consent decree.[1] *See Eckstein v. Eckstein,* 38 Md. App. 506, 379 A.2d 757 (1978); *Bell v. Bell,* 38 Md. App. 10, 379 A.2d 419 (1977).

### 3.

Appellants next attack the Maryland foreclosure rules which are found in Rules W 70 through W 81. They urge that the Maryland foreclosure procedure is unconstitutional which caused them to be deprived of due process of the law under the Fourteenth Amendment to the United States Constitution and Article 23 of the Maryland Declaration of Rights. The sale in this case was conducted pursuant to the power of sale

---

1. At argument counsel for appellants called to our attention three recent cases which he contended were helpful to his position. We have carefully considered them and find them inapposite to appellants' contentions.

granted in the deed of trust as authorized by Rule W 72 c and e which eliminates the requirements of Rule W 73. Rule W 73 provides for summons, hearing, and an initial finding by the chancellor that a default has occurred. Appellants cite no Maryland authority which even remotely supports their attack on the constitutionality of the rules of foreclosure.

The Federal District Court of Maryland refused to enjoin a Maryland foreclosure proceeding because, in its opinion, the debtors had ample opportunity to have their claims litigated in the state courts. In *Fisher v. Federal National Mortgage Assn.,* 360 F. Supp. 207 (D.C. Md. 1973), the Court in discussing the Maryland foreclosure rules said:

> Under Maryland law, an action to foreclose a mortgage containing a power of sale is commenced by the filing, in an equity court of the county where the mortgaged property is located, of an order to docket together with the mortgage as an exhibit. Rule W 72 c. Jurisdiction is conferred on the state court at the time of the docketing of the action. Rule W 72 e. Other provisions of the Rules indicate that the state equity court plays a very real and substantial role in mortgage foreclosure proceedings. Before the sale is made, an approved bond must be filed in the court in which the action was filed. Rule W 74 a. A mortgagor may seek an injunction to stay the sale. Rule W 76 b. More significantly, even after the sale has been made, it must be ratified by the court. Rules W 74 e and BR 6 (2) [sic]. Since Maryland law provides that a mortgage foreclosure sale is subject to the approval of the court, such a sale does not pass title to the property until ratified by the court. *Plaza Corp. v. Alban Tractor Co., Inc.,* 219 Md. 570, 578, 151 A.2d 170 (1958).
>
> Under Maryland foreclosure procedures, plaintiffs are afforded two separate opportunities in which they may challenge in a state court the legality of the foreclosure. First, under Rule W 76

b, plaintiffs may move prior to sale to enjoin the foreclosure. Secondly, after the sale but before ratification, plaintiffs have the opportunity to file objections to the sale. Rules W 74 e and BR 6 b (2) [sic]. The equity court has full power to hear and determine all objections which may be filed against the sale. *Wilson Bros. v. Cooey,* 251 Md. 350, 360, 247 A.2d 395 (1968). When an equity court has once assumed jurisdiction, it will retain its jurisdiction in order to settle all questions which might arise out of the subject in controversy. *Stater v. Dulany,* 236 Md. 399, 404, 204 A.2d 71 (1964); *Ledford Const. Co. v. Smith,* 231 Md. 596, 600, 191 A.2d 587 (1963). [Footnotes omitted.] [*Id.* at 210-11.]

In the present case, it is clear that the trustees complied with the requirements of the Maryland Rules. The suit was docketed pursuant to Rule W 72 c; an affidavit of indebtedness was submitted to the court under Rule W 72 d; and a bond was filed to protect the debtor's interest pursuant to Rule W 74 a. These actions amounted to a sufficient "preliminary judicial scrutiny" of the mortgage. Under Rule W 76 b, Mr. Billingsley, having received actual notice prior to the sale, sought to enjoin the foreclosure, giving as his reason the alleged promise to call off the sale if he brought the account up to date. The chancellor chose to consider the petition by an in-chambers conference and had before him all the facts which Mr. Billingsley now contends would have justified enjoining the foreclosure sale. The chancellor refused to do so for the reason we have heretofore mentioned. The appellants had a second opportunity to challenge the validity of the sale under Rules w 74 e and BR 6 b 2 which provide for the method of ratifying a foreclosure sale. Appellants filed exceptions to the ratification of the sale, but on February 2, 1978 they withdrew their exceptions and consented to the decree of final ratification. At that point, they still had thirty days to appeal to the court's discretion until enrollment of the decree but took no action until some five months after final enrollment. To suggest a lack of due process under such circumstances borders on the frivolous.

The appellants' principal legal reliance in their constitutional attack on the Maryland foreclosure rules is found in *Turner v. Blackburn,* 389 F. Supp. 1250 (W.D. N.C. 1975), but our reading of this case leads us to the conclusion that it is totally inapplicable not only because of the substantial differences between the provisions of the Maryland Rules and the North Carolina statute but also because of the factual differences in the cases. In *Turner, supra,* the mortgagor received no notice of the foreclosure sale of her house until eviction proceedings had been filed against her. The District Court in that case held that the lack of any notice requirement and the unavailability of a hearing before the taking of the mortgagor's property interest amounted to a constitutional lack of due process. Further, the North Carolina statute did not require an affidavit of indebtedness; a bond to be filed prior to foreclosure; nor did it require a judicial officer to ratify the sale. By the terms of that statute, the clerk of court exercised supervisory capacity over the foreclosure proceedings. Even a cursory reading of the W Rules makes it obvious that our rules in no way resemble the North Carolina statute which was held to be unconstitutional. Finally, under Maryland procedure, contrary to that of North Carolina, there is no final passing of title until the sale is finally ratified by the court.

After a thorough consideration of the W Rules, we are convinced they meet the due process requirements under the Fourteenth Amendment to the Constitution and Article 23 of the Maryland Declaration of Rights.

### 4. and 5.

The record in this proceeding indicates that subsequent to the purchase of this property at the foreclosure sale by the holder of the second lien that it sold the property by contract to Ralph D. Kaiser Co., Inc. which has joined in this proceeding as a party in interest.

Appellants, as a last gasp, contend that the chancellor below erred in issuing a writ of possession under Rule 637 directing them to surrender the property and they claim further error on the part of the chancellor for his requiring

them to file a $250,000.00 supersedeas bond under Rule 1020 for the protection of the trustees and purchasers. No such bond has been filed by the appellants.

Appellants allege that no sale to the Kaiser Co. ever was consummated. They cite as authority *Mizen v. Thomas,* 156 Md. 313, 144 A. 479 (1928), but again, that case is clearly distinguishable from the case presently under consideration. In *Mizen, supra,* the controversy involved a purchaser who was irresponsible and unable to complete the sale, which is plainly not the case here. Appellants also contend that as the purchase price has not been paid and no deed has been executed to the Kaiser Co., no writ of possession should have been issued. The Court of Appeals has made it clear as to what the status is of the various parties to a foreclosure sale in *Union Trust Co. v. Biggs,* 153 Md. 50, 55-56, 137 A. 509 (1927) when it said:

> [T]he sale of the mortgaged premises under the power of sale in the mortgage deed virtually foreclosed the mortgage and divested all rights of redemption which had remained in the mortgagor until the sale. [Citations omitted.] After the foreclosure sale the purchaser had the equitable interest in the land commensurate with that conveyed by the mortgage deed, and he was entitled to the legal title upon the final ratification of the sale by the court and the payment of the purchase money.... So the whole beneficial ownership or estate of both the assignee and the mortgagor had passed from the land into the obligation of the purchaser to pay. In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee and mortgagor.

Further, when we note that by the time the chancellor signed the writ of possession in this case more than two years from the date of the original sale had passed and that the appellants had been in possession of the premises during that

entire time, we conclude that the chancellor correctly exercised the discretion vested in him by Rule 637.

The failure of the appellants to file the supersedeas bond as ordered by the court does not *per se* operate to invalidate the appeal, but it does render this portion of the present case moot because the rights of the bona fide purchaser cannot be affected by a reversal of the lower court's decision. *Leisure Campground v. Leisure Estates,* 280 Md. 220, 372 A.2d 595 (1977); *Onderdonk v. Onderdonk,* 21 Md. App. 621, 320 A.2d 585 (1974). Appellants attempt to avoid the holding in these cases by suggesting that there was unfairness or collusion in the making of the sale. From our perusal of the record we find no such evidence.

*Decree affirmed.*
*Costs to be paid by appellants.*